TWO HUNDRED NINE LAKE SHORE BUILDING CORPORATION *et al.,* Plaintiffs-Appellants, *v.* CITY OF CHICAGO, Defendant-Appellee.

(No. 54616; )

First District—December 2, 1971.

*Rehearing denied January 13, 1972.*

Joseph A. Murphy, of Chicago, for appellants.

Richard L. Curry, of Chicago, (Marvin E. Aspen and Howard C. Goldman, of counsel,) for appellee.

Mr. PRESIDING JUSTICE McNAMARA delivered the opinion of the court:

Plaintiffs, a cooperative apartment building corporation and one of its tenant-shareholder officers, appeal from an order dismissing their complaint against the City of Chicago. In their complaint, plaintiffs sought a judgment declaring that the city did not have the statutory power to amend its Fair Housing Ordinance to regulate them, and for an injunction restraining the city from proceeding against them. On appeal plaintiffs contend primarily that the city's enactment of an amendment to the Fair Housing Ordinance and all proceedings against plaintiff are void. They also urge that the trial court erred in dismissing the complaint without declaring their rights.

The principal asset of the plaintiff corporation is a corporation apartment building located at 209 East Lake Shore Drive in Chicago. Tenants are shareholders of the corporation and lease their individual apartments from the corporation. Corporation affairs are managed by a board of directors, while routine operation of the building is performed by a managing agent. All of the leases provide that lease assignments must be approved by the directors or by a favorable vote of two-thirds of the other tenants. In July 1968, Samuel Sax offered to purchase the lease for the apartment of Mrs. Mary Barnard, a tenant in the building. On July 25, 1968, the managing agent forwarded the Sax offer with a ballot to the directors. On August 19, 1968, Mrs. Barnard filed a complaint with the Commission on Human Relations of the City of Chicago charging that plaintiffs were withholding approval of the lease assignment because Mr. Sax was Jewish. On September 4, 1968, the directors voted to withhold consent to the assignment of the Barnard lease and reaffirmed this action in December 1968. On February 5, 1969, Sax filed a complaint with the commission alleging substantially the same facts as Mrs. Barnard had set forth in her complaint.

The commission consolidated the complaints and ordered a conciliation hearing. At the hearing plaintiffs agreed to submit the Sax offer to a vote of the tenants. The tenants voted to withhold their consent to the assignment. On May 19, 1969, Sax and Mrs. Barnard filed amended complaints with the commission. After a public hearing was scheduled by the commission, both sides took discovery depositions and the matter was continued from time to time. On June 27, 1969, plaintiffs filed the instant complaint seeking the declaratory judgment and other relief. On August 26, 1969, the trial court allowed the city's motion to dismiss the complaint. The order of dismissal also dissolved a stay of proceedings before the commission.

A brief chronology of the pertinent legislation is essential to an under-

standing of the issues. In 1947 the Human Relations Commission of Chicago was created by ordinance. On September 13, 1963, the city enacted a Fair Housing Ordinance. Pursuant to the express provisions of statute, Ill. Rev. Stat. 1963, ch. 24, par. 11—42—1, allowing it to license and regulate real estate brokers, the city made it unlawful for real estate brokers to engage in discriminatory housing practices. On July 11, 1968, the city amended the Fair Housing Ordinance by making it "unlawful for any owner * * * managing agent, or other person * * * or corporation having the right to * * * sublease any housing accommodation * * *" to engage in discriminatory housing practices. The amendment authorized the commission to recommend to the Corporation Counsel that ordinance violation actions be taken against those found by the commission to have engaged in unfair housing practices. On July 1, 1969, a statute (Ill. Rev. Stat. 1969, ch. 24, par. 11—11.1.1), which was signed by the Governor on August 21, 1968, became effective. This statute enabled municipalities to create effective regulation of housing accommodations in order to prohibit discrimination on the basis of race, creed, color, ancestry or national origin.

We initially consider the city's argument that the issue is moot, and that therefore the appeal should be dismissed. This contention is based upon the assistant Corporation Counsel's representation to this court that the city and the commission will take no further action against plaintiffs in the instant matter.

■■ Even if counsel's representation is binding upon the city and commission, it is insufficient to render the issue moot. A question is said to be moot when it presents or involves no actual controversy, interests or rights of the parties or when the issues have ceased to exist. (*Gribben v. Interstate Motor Freight System,* 18 Ill.App.2d 96, 151 N.E.2d 443.) Counsel's promise that the controversy will cease to exist in the future because the city and commission will not proceed against plaintiffs does not presently render the issue moot. Plaintiffs seek the security of a judicial determination as to their rights and duties, and are entitled to such a determination.

Plaintiffs' primary contention is that the amendment to the Fair Housing Ordinance enacted by the city on July 11, 1968, was void, and that all subsequent proceedings taken against them under the amendment consequently were void. Plaintiffs so argue because at the time of the enactment the General Assembly had not given the city the express power to regulate any persons who practiced discrimination in housing other than real estate brokers.

■■ In Illinois under the Constitution of 1870 in effect at the time of these proceedings, a municipality had no inherent power, but could

exercise only those powers expressly granted by the Legislature. In *Father Basil's Lodge, Inc. v. City of Chicago,* 393 Ill. 246, 65 N.E.2d 805, at p. 252 our Supreme Court used language which is pertinent and controlling in the instant case:

> "It is well settled that a city * * * derives its existence and power from the General Assembly; that it possesses no inherent power; that in order to legislate upon, or with reference to, a particular subject or occupation, it must be able to point to the statute which gives it the power to do so; that statutes granting powers to municipal corporations are strictly construed, and any fair or reasonable doubt of the existence of an asserted power is resolved against the municipality which claims the right to exercise it; that the only implied powers which a municipal corporation possesses and can exercise are those which are necessarily incident to powers expressly granted; and that since a city has no power except by delegation from the General Assembly, in order for it to license or regulate any occupation, the power to do so must be expressly granted * * *."

This principle was reaffirmed by the Supreme Court in *Chicago Real Estate Board v. City of Chicago,* 36 Ill.2d 530, 224 N.E.2d 793. In that case, the court observed that the legislature had granted the express power to the city to regulate real estate brokers, and thus upheld th city's power to impose restrictions on real estate brokers who engage in discriminatory housing practices. However at p. 537, the court stated as follows:

> "The validity of this ordinance depends upon whether it is within the purview of the powers of the City of Chicago. As a municipal corporation the city is without inherent power, and must rely upon powers expressly granted and those necessarily incident to such powers in order to adopt regulatory measures. [Citation omitted.]"

Thus it is apparent that the city's power to prohibit real estate brokers from committing unfair housing practices did not permit it to extend that regulation to private owners at a time when it did not have the statutory authorization to do so. Indeed, the General Assembly recognized that the city had no such authority when subsequent to the amendatory ordinance it passed a law which did give municipalities the power to regulate private owners who engaged in unfair housing practices. Moreover, the city also recognized that it had no such power when under the original Fair Housing Ordinance it limited the enforcement provisions to real estate brokers.

■■ The city apparently concedes the applicability of the above stated principles to the instant case. However it suggests that by aggregating its express grants of power from the legislature: police protection, public order, nuisance abatement and food, water and disease control, it thus

had the authority to amend the Fair Housing Ordinance. In the *Father Basil's Lodge case, supra,* the court held that police protection and public order were police powers and could not "be invoked by a municipality as an independent source of legislative power since it was not intended * * * to confer any power except the powers expressly delegated." And we believe that it is untenable to maintain that the legislative authority conferred on a municipality to abate nuisances or to regulate food, water and disease control, could possibly generate the power for a municipality to regulate private owners who engage in unfair housing practices.

■■ We also reject the city's argument that because the order dismissing the instant complaint was entered on August 26, 1969, after the enabling legislation had become the law of the State, the order of dismissal was proper. Since the amendatory ordinance was void for want of express statutory authority to enact it, it had no legal existence whatsoever. In *People ex rel Rhodes v. Miller,* 392 Ill. 445, 64 N.E.2d 869, the court stated at pp. 449-50:

"It is well settled that although the legislature may, by statute, validate the irregular or defective exercise of a power where the power already existed, and the proceedings sought to be cured was not one of the fundamentals of the power exercised, it cannot by a curative act render a void proceeding valid. * * * The rule which recognizes the power of the legislature to validate, by a curative act, proceedings which it might have authorized in advance is limited to cases of the irregular exercise of a power, and does not operate to supply a power which was lacking in the first instance. * * * The rule is firmly established that while a curative statute may heal irregularities, it cannot make valid a proceeding which is void. * * * It cannot infuse life and validity into that which, without its aid, is wholly void. Jurisdictional requirements, whether statutory or constitutional, cannot be waived by subsequent curative legislation."

See also *Dean Milk Co. v. City of Aurora,* 404 Ill. 331, 88 N.E.2d 827.

■■ We hold therefore that the city lacked the requisite legislative authority to enact the amendatory ordinance at the time it attempted to do so. The subsequent enabling legislation could not and did not bring vitality to this otherwise barren attempt of the municipality to regulate the social evil.

■■ Plaintiffs also urge that the trial court erred in dismissing the complaint without declaring their rights under the purported amendatory ordinance. In the trial court, the city maintained that declaratory judgment was inappropriate relief for plaintiffs because they had failed to exhaust their administrative remedies prior to filing the instant action.

While plaintiffs in their brief have argued the point extensively, the city in its brief has not responded to plaintiffs' argument. Our court has held that an appellee's failure to reply to an argument raised in appellant's brief is practically an admission that the trial court erred in its holding on the issue. (*Scharlau v. Lombard State Bank*, 278 Ill.App. 487.) Moreover, when the validity of a statute or municipal ordinance is challenged, Section 57.1 of the Civil Practice Act permits declaratory judgment actions without the necessity of seeking prior relief before the administrative agency involved.

We find that the amendatory ordinance is void for lack of express statutory power to enact it, and we further find that all proceedings taken against plaintiffs under said ordinance are void. Accordingly, the order dismissing plaintiffs' complaint is reversed, and the cause is remanded to the trial court with directions to enter judgment declaring that the ordinance enacted by the City of Chicago on July 11, 1968, amending the Fair Housing Ordinance, is void as it relates to plaintiffs, and to further declare all proceedings which have been taken against plaintiffs to be void.

Order reversed and cause remanded with directions.

DEMPSEY and McGLOON, JJ., concur.