ANNETTE M. LOTTER, M.D., Plaintiff-Appellee, *v.* COLLAGEN CORPORATION *et al.*, Defendants-Appellants.

First District (2nd Division)   No. 82—2046

Opinion filed June 21, 1983.

John P. Scotellaro and John W. Rotunno, both of Bell, Boyd & Lloyd, of Chicago (Wilson, Sonsini, Goodrich & Rosati, of Palo Alto, California, of counsel), for appellants.

No brief filed for appellee.

JUSTICE HARTMAN delivered the opinion of the court:

This controversy arises out of the business decision of defendant Collagen Corporation (Collagen) not to sell a product called Zyderm Collagen Implant (Zyderm) to plaintiff Annette Lotter, M.D. Count I of Lotter's amended complaint charged defendants Collagen, Judy Abbey, Robert Swartz, M.D., and Richard Roe, M.D., *inter alia*, with violating the Illinois Antitrust Act (Ill. Rev. Stat. 1981, ch. 38, par. 60—1 *et seq.*) and the common law by conspiring together to restrain trade or commerce. Count II alleged that defendants violated the Uniform Deceptive Trade Practices Act (Ill. Rev. Stat. 1981, ch. 121½, par. 311 *et seq.*) by making certain false representations with respect to Lotter. On August 19, 1982, the circuit court entered a written order granting Lotter's motion for a preliminary injunction from which this interlocutory appeal proceeds. 87 Ill. 2d R. 307(a)(1).

The issues raised on appeal include whether: Lotter established the prerequisites for preliminary injunctive relief; defendants were denied due process of law; the order complied with section 11—101 of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 11—101); and the court properly allowed into evidence the letters written by Lotter's patients and the photographs of some of her patients. We reverse and remand with instructions.

At the hearing on Lotter's motion for a preliminary injunction, the president of Collagen, Howard Palefsky, stated that a patent, is-

sued to Stanford University on the application of soluble collagen for soft tissue reconstruction, was ultimately licensed to Collagen for its use. Collagen has engaged in developmental and clinical testing, as well as marketing and sale of Zyderm since it received United States Food and Drug Administration clearance in July 1981. Collagen is concerned that the initial use of this product by physicians who may abuse it could ultimately ruin its availability for everyone. Under adverse examination, Palefsky stated that Collagen refuses to sell Zyderm to Lotter because of her unfavorable reputation in the medical community.

The vice-president of marketing at Collagen, Judith Boshart, also testified as an adverse witness. She sought out information from others concerning the reputations of physicians with whom Collagen would be involved. Dr. Lotter had an inordinate number of lawsuits filed against her, lost her hospital privileges and had a patient die in her office from a phenol peel, which is a very common procedure. She made no independent investigation of Lotter.

Dr. Lotter testified that she belonged to numerous medical societies, won several academic awards and authored many publications. Since starting private practice in 1972, she performed over 8,000 surgical procedures. Of these, only 25, or three-tenths of one percent, had resulted in lawsuits against her, a much lower percentage than the national average. Most of the malpractice suits were settled; none resulted in a judgment against her. She resigned from her position at Grant Hospital because she was unable to comply with the hospital's bylaw requiring her to carry personal malpractice insurance. She was not then under investigation by the Illinois Department of Registration and Education. Based on her education and experience, she would be able to use Zyderm professionally and competently.

Zyderm is designed to elevate depressions in the skin and reduce disfigurement. The safety of the product is insured by pretesting the patient through administering a very small dosage. Two hundred of her patients were in need of Zyderm. She identified 21 sets of photographs, received in evidence, showing the specific skin problems of 21 patients. All had been treated to the fullest extent possible. Zyderm is the only further treatment available. All the patients desire this further treatment. Two of her patients were suicidal due to the nature of their appearance. Lotter introduced documentary evidence revealing that, until that time, the Medical Disciplinary Board of the State of Illinois found her not guilty of gross medical malpractice, "manifest" professional incompetence, or poor standards of care in her treatment of the patient who died in her office.

On the seventh day of the hearing, during Collagen's direct examination of its first defense witness, Palefsky, the court stated that it had "heard enough," and was ready to order injunctive relief. It refused to allow Collagen to complete Palefsky's testimony or to put on the remainder of its defense. Collagen offered to prove that Lotter lost her malpractice insurance because the insurance company felt that she presented an excessive risk due to the number of malpractice suits filed against her. Collagen was also prepared to introduce a certificate showing that Lotter was currently under investigation by the Illinois Department of Registration and Education.

The court's written order required: Collagen to "prepare" Lotter for use of Zyderm; Collagen to ship to Lotter two six-syringe boxes of "test" doses; Lotter to transmit to Collagen case report forms denoting the results of Zyderm testing; Collagen to ship one six-syringe box for each patient showing negative test results in accordance with Collagen's customary procedures, to a maximum of 12 boxes. This interlocutory appeal followed. On September 1, 1982, this court stayed the order of the circuit court during the pendency of the appeal.

I

■ Lotter previously moved to dismiss the interlocutory appeal, contending that the controversy is moot because of this court's stay of the preliminary injunction order and the lapse of time since the latter order was entered. She asserted that the emergency status of her patients "no longer exists" and she would no longer object to the vacation of the preliminary injunction order. That motion was denied on March 1, 1983. We briefly comment on the reason for that denial. Although an appellate court will not review a case merely to resolve moot or abstract questions, to establish precedent, or to render a judgment to guide future potential litigation (*La Salle National Bank v. City of Chicago* (1954), 3 Ill. 2d 375, 379, 121 N.E.2d 486; *Kohan v. Rimland School for Autistic Children* (1981), 102 Ill. App. 3d 524, 527, 430 N.E.2d 139), Lotter's motion failed to explain how the passage of time eliminated the emergency status of the patients in need. Her motion is contrary to the evidence she introduced at the proceeding before the circuit court, and her subsequent contention, that her inability to provide treatment requiring the "use of Zyderm *** [was] effectively destroying her medical practice." More importantly, her motion declares an intent to proceed at the trial level with the merits of her complaint. Among the prayers for relief therein set forth is one for a permanent injunction based upon the same theories that were utilized at the preliminary injunction hearing. On the other hand, Col-

lagen seeks a judicial determination as to its rights and duties, to which it is entitled. (*Two Hundred Nine Lake Shore Drive Building Corp. v. City of Chicago* (1971), 3 Ill. App. 3d 46, 49, 278 N.E.2d 216.) Accordingly, the motion to dismiss the appeal as moot was denied.

## II

Lotter has failed to file a brief on appeal. Nevertheless, we elect to decide the merits of the case. *First Capitol Mortgage Corp. v. Talandis Construction Corp.* (1976), 63 Ill. 2d 128, 133, 345 N.E.2d 493.

Collagen contends that the circuit court erroneously entered the preliminary injunction because Lotter failed to establish any of the prerequisites for injunctive relief. In particular, Collagen maintains that Lotter did not demonstrate that she has a clearly ascertained right to purchase Zyderm from Collagen. In order for a preliminary injunction to issue, the movant must show, *inter alia,* he or she has a lawful right in need of protection. *Kaplan v. Kaplan* (1981), 98 Ill. App. 3d 136, 141, 423 N.E.2d 1253.

■ Collagen maintains that it has the unilateral right to determine with whom it will and will not deal, asserting that in the absence of a purpose to create or maintain a monopoly, an antitrust law does not limit the right of the manufacturer engaged in an entirely private business, freely to exercise its own independent discretion as to parties with whom it will deal. (*United States v. Colgate & Co.* (1919), 250 U.S. 300, 307, 63 L. Ed. 992, 997, 39 S. Ct. 465, 468; see *Reeves, Inc. v. Stake* (1980), 447 U.S. 429, 438-39, 65 L. Ed. 2d 244, 252, 100 S. Ct. 2271, 2278.) Central to a patentee's legal monopoly is the right to prevent others from utilizing its discovery without its consent. (*Zenith Radio Corp. v. Hazeltine Research, Inc.* (1969), 395 U.S. 100, 135, 23 L. Ed. 2d 129, 155, 89 S. Ct. 1562, 1583.) Incidental to the monopoly grant of a patent are the rights in the patentee to choose the licensees who will be authorized to practice the teaching of the patent. (*La Salle Street Press, Inc. v. McCormick & Henderson, Inc.* (7th Cir. 1971), 445 F.2d 84, 95.) The antitrust laws do not require a patent holder to forfeit the exclusionary power inherent in his patent the moment the patent affords him monopoly power over a pertinent market. (*SCM Corp. v. Xerox Corp.* (2d Cir. 1981), 645 F.2d 1195, 1204, *cert. denied* (1982), 455 U.S. 1016, 72 L. Ed. 2d 132, 102 S. Ct. 85.) A private manufacturer retains his right to decide with whom he will deal so long as he does not intend to restrain competition or expand his monopoly and does not act coercively. (*Official Airline Guides, Inc. v. FTC* (2d Cir. 1980), 630 F.2d 920, 927-28, *cert.*

*denied* (1981), 450 U.S. 917, 67 L. Ed. 2d 343, 101 S. Ct. 1362.) Although the foregoing authorities dealt with Federal, rather than State, antitrust laws, under our Illinois Antitrust Act, our courts are bound to follow Federal court construction of statutes similarly worded, as in this case. Ill. Rev. Stat. 1981, ch. 38, par. 60—11.

■ In the case *sub judice*, Lotter offered no evidence that defendants conspired together to unreasonably restrain competition or to expand their monopoly. The circuit court's decision to issue the preliminary injunction was not based upon any finding that defendants violated the antitrust laws. Rather, during the course of the proceedings, the court formed the foundation for its decision as follows:

> "I don't think that a human being[']s well-being because of a patent is something to be restricted because of a patent. *** I can see where an opener for a bottle cap has a patent. That would be something entirely different. But when you [Collagen's counsel] are telling me that a drug is something that you have a right to determine who in the world is going to get it, I disagree with you."

Thus, the circuit court apparently believed that since the product involved here was a medical drug to be used for purposes of health care, Collagen did not have the right to refuse to sell to Lotter. No precedent was offered to support the court's theory. In the absence of an antitrust violation or some other illegal purpose, Collagen had the right to decide not to sell Zyderm to Lotter and was not required to justify its business judgment by showing that Lotter was unqualified or incompetent. Lotter failed to establish a right to purchase Zyderm from Collagen on any other basis. Accordingly, the preliminary injunction was improperly entered and must be vacated upon reversal. In light of the foregoing disposition, other issues raised by appellant need not be addressed.

Reversed and remanded with instructions.

DOWNING, P.J., and STAMOS, J., concur.