CHECK INN LOUNGE, INC., *et al.*, Plaintiffs-Appellants and Cross-Appellees, v. WALTER S. KOZUBOWSKI, City Clerk of the City of Chicago, *et al.*, Defendants-Appellees (Ann Carroll, Intervenor-Appellee and Cross-Appellant).

First District (2nd Division)   No. 86—3217

Opinion filed December 22, 1987.—Rehearing denied January 15, 1988.

1024

Morton Siegel, Michael A. Moses, and James L. Webster, all of Siegel, Moses & Schoenstadt, of Chicago, for appellants.

Michael Levinson, of Chicago, for appellee Board of Election Commissioners.

Daniel P. Madden, of Chicago, for appellee Ann Carroll.

JUSTICE HARTMAN delivered the opinion of the court:

Plaintiffs, Check Inn Lounge, Inc., and Chesterton Super Food and Liquors, Inc. (licensees), appeal from orders: (1) dismissing a paragraph of their amended complaint and finding that the proper official for the filing of petitions and revocations under the Liquor Control Act of 1934 (Ill. Rev. Stat. 1985, ch. 43, par. 166 *et seq.*) (Act) is the clerk of the City of Chicago (clerk); and (2) entering judgment in favor of intervenor Ann Carroll (intervenor), ordering that a local option referendum appear on the ballot at the 34th precinct, 46th ward, in the City of Chicago at the election held November 4, 1986. Intervenor cross-appeals from an order denying her motion to dismiss count III of licensees' amended complaint and directing that the printed precinct register of voters dated October 1984 for the 34th precinct, 46th ward, be used to determine "legal voters" as defined in the Act. Ill. Rev. Stat. 1985, ch. 43, par. 166.

We are asked to review whether the circuit court erred: (1) in dismissing paragraph 9, count I, of licensees' amended complaint; (2) in denying intervenor's motion to dismiss count III of licensees' amended complaint; and (3) in entering judgment against licensees.

On August 5, 1986, certain persons (petitioners) opposed to the

sale of liquor in the 34th precinct, 46th ward (34th precinct), in the City of Chicago filed a petition with defendant Walter Kozubowski, city clerk of the City of Chicago (clerk), pursuant to article IX of the Act. (Ill. Rev. Stat. 1985, ch. 43, par. 166 *et seq.*) The Act permits individual communities to hold binding referenda to determine whether to permit sales of liquor at retail in the community. (Ill. Rev. Stat. 1985, ch. 43, par. 167.) In cities of more than 200,000 inhabitants, the referenda, or local option propositions, are held at the precinct level. To place a local option proposition on a ballot, a petition signed by at least 25% of the precinct's "legal voters" (Ill. Rev. Stat. 1985, ch. 43, par. 167) must be filed with the appropriate city "clerk," as defined in the statute. (See Ill. Rev. Stat. 1985, ch. 43, par. 166.) A signatory may, in writing, within 20 days, revoke his or her signature submitted to the clerk with whom the option petition has been filed. Ill. Rev. Stat. 1985, ch. 43, par. 169.

In the case *sub judice*, the local option petition requested that a proposition be submitted to the voters of the 34th precinct at the election of November 4, 1986, which would prohibit the sale at retail of alcoholic liquor in the 34th precinct. The signatures of 252 alleged legal voters of the 34th precinct were attached to the petition. The clerk certified receipt of the petition and filed it with defendant board of election commissioners of the City of Chicago (board), on August 6, 1986. Licensees, whose businesses are located in the 34th precinct, on August 26, 1986, filed a petition to revoke 56 signatures listed among the local option signatories with the clerk and challenged the sufficiency of the local option proposition.

Licensees also filed a two-count, verified complaint on September 11, 1986, seeking to enjoin the board and the clerk from submitting the referendum to the voters on November 4, 1986. Count I alleged that petitioners failed to meet the 25% minimum statutory requirement of legal voters' signatures, or 122 signatures, because 145 were invalid, by reason of revocation or other statutory violations, leaving 107 signatures, which did not satisfy the requirements of the Act. Count II alleged that the proposed referendum violated the Illinois Election Code (Election Code) Ill. Rev. Stat. 1985, ch. 46, par. 1—1 *et seq.*), which limits to three the number of public questions which may be submitted to voters within the same political subdivision in one election (Ill. Rev. Stat. 1985, ch. 46, par. 28—1), since three other questions already had been submitted to the board to be voted on by the electors of Chicago, including the 34th precinct.

The clerk moved to dismiss the complaint on September 23, 1986 (Ill. Rev. Stat. 1985, ch. 110, pars. 2—615, 2—619), maintaining that

he was not a proper defendant to the action because his certification of the petitions and submission of them to the board are purely ministerial and that it is not his duty to determine the validity of the petitions or questions submitted to the electorate. The board opposed the clerk's motion to be dismissed, citing the extensive involvement of the clerk in the proceedings under section 9—4 of the Act. (Ill. Rev. Stat. 1985, ch. 43, par. 169.) The clerk's motion was denied on October 6, 1986.

Meanwhile, on October 2, 1986, licensees filed an amended complaint, realleging counts I and II of the initial complaint and adding a third count. Count III also challenged the number and validity of signatures in the local option proposition submitted to the clerk, calculating their figures from the definition of "legal voter" contained in section 9—1 of the Act: "a person whose name appears on the poll list of the last general election of county or state officers." (Ill. Rev. Stat. 1985, ch. 43, par. 166.) The number of "legal voters" in the 34th precinct at the last general election, licensees contended, was 616, of which 154 valid signatures were needed to satisfy the Act. Licensees concluded that only 60 of the 252 petition signatures were valid. As in their initial complaint, licensees sought to enjoin the board and the clerk from submitting the proposition to the 34th precinct voters and requested that the petition be declared invalid.

On October 3, 1986, the intervention petition was filed (Ill. Rev. Stat. 1985, ch. 110, par. 2—408(a)), asserting that intervenor was a legal voter of the 34th precinct and the Act permits any legal voter in a precinct where an election will be held to appear and defend or oppose the validity of a local option petition. (Ill. Rev. Stat. 1985, ch. 43, par. 169.) Her petition to intervene was allowed.

Intervenor moved to strike and dismiss counts I through III of licensees' amended complaint. (Ill. Rev. Stat. 1985, ch. 110, par. 2—615.) As to count I, intervenor asserted: licensees' written revocations were untimely filed with the clerk on August 26, 1986, more than 20 days after the petition was filed; portions of count I alleging statutory violations in the collection of signatures were not sufficiently specific to satisfy the requirement of particularity; and there were enough valid signatures on the local option proposition to constitute 25% of the 34th precinct's legal voter population. As to count II, intervenor argued that the 34th precinct and the City of Chicago are distinct political subdivisions; therefore, placing the local option referendum on the ballot would not violate the Election Code. She contended that count III should be stricken because licensees improperly relied on the definition of "legal voter" set forth in the Act, in-

stead of the definition contained in the Election Code. Compare Ill. Rev. Stat. 1985, ch. 43, par. 166 with Ill. Rev. Stat. 1985, ch. 46, par. 3—1.2.

The circuit court denied intervenor's motion to dismiss count III on October 9, 1986, and ruled that the October 1984 printed precinct register of the 34th precinct was the proper means to identify "legal voters" in the precinct. In another order, entered October 10, the court dismissed certain portions of count I of licensees' amended complaint. On October 17, the circuit court dismissed paragraph 9, count I, of licensees' amended complaint and found that "clerk" in section 9—1 of the Act (Ill. Rev. Stat. 1985, ch. 43, par. 166) meant the city clerk of Chicago. Judgment was entered for intervenor on October 20, 1986. The court also then ordered that the local option referendum be placed on the ballot in the 34th precinct at the November 4, 1986, election.

Of the 487 registered voters in the 34th precinct, 250 cast ballots on the referendum: the proposition passed with 163 votes in favor and 87 against. Licensees' motion to stay the election results on November 14, 1986, was denied. Licensees filed a notice of appeal on November 14, 1986, seeking to vacate the orders of October 10, October 17, and October 20, 1986, and to have the cause remanded for further consideration. On November 26, 1986, licensees' motion in this court to stay the election results was granted. Intervenor filed a notice of cross-appeal on December 4, 1986, seeking to reverse the circuit court order denying her motion to dismiss count III of licensees' amended complaint and ruling in favor of licensees' interpretation of "legal voter."

I

Licensees initially contend that the circuit court erred in dismissing paragraph 9, count I, of their amended complaint, which alleged the timely filing of written revocations of signatures to the local option petition.

The dismissal emanated from the court's finding that the proper official for the filing of petitions and revocations under article IX of the Act is the city clerk of the City of Chicago. (Ill. Rev. Stat. 1985, ch. 43, par. 166 et seq.) By so ruling, licensees claimed, the circuit court subverted their cause of action because the local option petition was filed with the clerk on August 5, 1986, but not filed by him with the board until August 6. Licensees' submission of 56 written signature revocations on August 26, 1986, therefore came more than 20 days after the filing of the petition with the clerk. Licensees insist

that the court should have held the board to have been the proper entity with which to file petitions and revocations (Ill. Rev. Stat. 1985, ch. 43, par. 169), which would have fulfilled the 20-day limitation.

Licensees rely upon section 9—1 of the Act (Ill. Rev. Stat. 1985, ch. 43, par. 166), defining in part:

" 'Clerk,' with reference to cities, villages and incorporated towns, and precinct situated therein, means the town, city or village clerk as the case may be; with reference to cities, villages and incorporated towns which have by ordinance created a Board of Election Commissioners, it means the Board of Election Commissioners * * *."

Licensees concede that the instant board is not and has not been elected, but is an appointed body. They argue, however, that "ordinance" should be read broadly to include ordinance, referendum or resolution. To interpret the word "ordinance" narrowly, licensees maintain, would render section 9—1 meaningless because the legislature created a uniform method for regulating and conducting municipal elections (Ill. Rev. Stat. 1885, ch. 46, par. 155 *et seq.*), which should include local option elections such as the one at issue.

By its terms, the 1885 municipal election law could have been adopted by a city only through a referendum. (Ill. Rev. Stat. 1885, ch. 46, par. 155.) Article II of the 1885 election law provided:

"In every city, village and incorporated town so adopting this act, there shall be created a board of election commissioners, which shall be composed of three members * * * and shall be appointed by the county court in the county in which such city, village or incorporated town shall be located." (Ill. Rev. Stat. 1885, ch. 46, par. 170.)

The Chicago electorate adopted the provisions of the statute by a citywide referendum on November 3, 1885.

Similarly, licensees observe, the 1947 City Election Law (Ill. Rev. Stat. 1985, ch. 46, par. 6—1 *et seq.*) provides in pertinent part that articles 6, 14, and 18, so far as they are the same as those of the provisions of the 1885 act, must be construed as a continuation of such prior provisions and not as a new enactment and any city, village or unincorporated town which had adopted the 1885 act automatically became subject to the provisions of articles 6, 14, and 18 of the 1947 act. Those three articles shall be known together as the City Election Law. (Ill. Rev. Stat. 1985, ch. 46, par. 6—1.) As with the act of 1885, the City Election Law can be adopted only by referendum and provides for an appointed board of election commissioners. Ill. Rev.

Stat. 1985, ch. 46, pars. 6—2, 6—21.

Licensees conclude that in 1885, as now, a board of election commissioners could not have been created by ordinance but only by referendum, followed by court appointment of board members; therefore, statutory construction of the word "ordinance" in its usual sense would breach a fundamental tenet of statutory interpretation, that where multiple constructions may be placed on a statute, the court should select that which leads to a logical result (*People v. Bournes* (1977), 55 Ill. App. 3d 237, 240, 370 N.E.2d 1230) and not render the statute meaningless (*Yellow Equipment & Terminals, Inc. v. Lewis* (1976), 35 Ill. App. 3d 875, 879, 342 N.E.2d 426; *Towers v. Schull* (1954), 3 Ill. App. 2d 358, 366, 122 N.E.2d 62). "Ordinance" therefore must be read to include referendum and such a reading would assure harmony among the various provisions of the Act and the Election Code.

█ It is evident, however, that the Election Code and the Act are significantly different in the essential requirements involved here. For example, 25% of the legal voters are required to sign a local option petition pursuant to the Act (Ill. Rev. Stat. 1985, ch. 43, par. 167), whereas 10% of the registered voters are required to sign public question petitions under the Election Code (Ill. Rev. Stat. 1985, ch. 46, pars. 28—6, 28—7). Those signing local option petitions provided by the Act must date their signatures (Ill. Rev. Stat. 1985, ch. 43, par. 169); however, there is no comparable provision under the Election Code. Petitions authorized by the Act must be filed 90 days before the election (Ill. Rev. Stat. 1985, ch. 43, par. 167), although only 78 days are required for filing before an election under the Election Code (Ill. Rev. Stat. 1985, ch. 46, par. 28—2). To revoke a filed signature, a petition signatory under the Act must do so in writing within 20 days from the date of its filing (Ill. Rev. Stat. 1985, ch. 43, par. 169); there is no comparable Election Code provision. The procedure prescribed by the Act to contest petitions must be commenced 30 days prior to the date of the election (Ill. Rev. Stat. 1985, ch. 43, par. 169); yet, only five business days after the last day for filing a petition are allowed under the Election Code (Ill. Rev. Stat. 1985, ch. 46, par. 10—8). The forum for contesting a petition under the Act is the circuit court (Ill. Rev. Stat. 1985, ch. 43, par. 169), whereas the board of election commissioners, acting as an electoral board, performs that function under the Election Code (Ill. Rev. Stat. 1985, ch. 46, pars. 10—8, 10—9, 28—4). The disparate statutory requirements governing local option petitions as contrasted with petitions for the submission of public questions demonstrates a legislative intent that in these in-

stances, which controlled the issues in the present case, the Act and the Election Code must be read separately.

■ Furthermore, the Act prescribes comprehensive statutory procedures which require the clerk's involvement, rather than the board's, with respect to the local option petitions. For example, the local option petition is addressed to the clerk; is to be filed with the clerk; must be certified by the clerk and copies delivered by the clerk as requested by interested parties; must be served with summons with respect to the filing of the petition challenges; must appear before the circuit court on behalf of the political subdivision named in the form (see *Schierhorn v. Marcin* (1973), 10 Ill. App. 3d 551, 553, 294 N.E.2d 771); and is required to certify the local option question to the appropriate election officials. (Ill. Rev. Stat. 1985, ch. 43, par. 169.) Parenthetically, if the board were to be identified as the city clerk, the last provision mentioned would require the board to certify to itself the local option question, an absurdity in terms. By contrast, the duties of the board as the proper election official shows differences in authority, duties and responsibilities compared to those of a city clerk (Ill. Rev. Stat. 1985, ch. 46, pars. 6—24, 6—25, 6—26, 6—59, 6—60, 6—65), which demonstrate a legislative intent that the board serve as an impartial rule maker, custodian of essential records, and that it undertake administrative compliance investigations where necessary.

The appellate court recently addressed an analogous issue in *Quarles v. Kozubowski* (1987), 154 Ill. App. 3d 325, 507 N.E.2d 103. In *Quarles,* liquor licensees in Chicago challenged the sufficiency of local option petitions submitted to Kozubowski, the city clerk, pursuant to the Act. There, the appellate court held that to interpret "clerk" as the board of election commissioners would be inconsistent with the Act as construed by the clerk, since he accepted the petitions submitted by the voters, failed to inform the voters that the petitions should be filed with the board, and certified the filing to the board. Conversely, the board never questioned the clerk's receipt and certification of the proposition. The court concluded that, although it was possible to read "clerk" as "Board of Election Commissioners," when the city clerk receives the petition and certifies it to the board, "clerk" will be construed as the city clerk. *Quarles,* 154 Ill. App. 3d at 335-36.

■ From the foregoing it is clear that the board in this case cannot qualify as "clerk" under the Act, either through statutory construction or practical interpretation by the entities involved. None of the parties here dispute that the clerk received the petition filed at

his office by licensees on August 5, 1986, and certified it to the board the next day. Here, too, the clerk neither informed petitioners that the proposition must be filed with the board, nor did the board protest the initial filing with and certification by the clerk. Both the clerk and the board, by their respective actions, treated the petitions as having been filed with the appropriate agency, and apparently have done so over a period of years. See, *e.g.*, *Heerey v. Zoning Board of Appeals* (1980), 82 Ill. App. 3d 1088, 1093-94, 402 N.E.2d 617; *Ranquist v. Stackler* (1977), 55 Ill. App. 3d 545, 555, 370 N.E.2d 1198.

■■■ The language of a statute must be given its plain and ordinary meaning. (*Maloney v. Bower* (1986), 113 Ill. 2d 473, 479, 498 N.E.2d 1102; *Coldwell Banker Residential Real Estate Services of Illinois, Inc. v. Clayton* (1985), 105 Ill. 2d 389, 396, 475 N.E.2d 536.) Legislative intent first must be discerned from the language of the subject statute itself and, if legislative intent can be deduced from the terms used, it will be given effect without resort to other aids and construction. (*Interlake, Inc. v. Industrial Comm'n* (1983), 95 Ill. 2d 181, 192-93, 447 N.E.2d 339.) It is not the court's function to expand or restrict the meaning of an unambiguous term. (*Village of Woodridge v. County of Du Page* (1986), 144 Ill. App. 3d 953, 955, 494 N.E.2d 1262; *Ehredt v. Forest Hospital, Inc.* (1986), 142 Ill. App. 3d 1009, 1012, 492 N.E.2d 532.) Section 9—1 of the Act clearly refers to boards of election commissioners acting as clerks only when such boards are created by ordinance; otherwise, clerk means "town, city or village clerk." (Ill. Rev. Stat. 1985, ch. 43, par. 166.) "Ordinance" has a meaning distinct from that of "referendum": an ordinance is a legislative act of a legislative body (*Woolfolk v. Board of Fire & Police Commissioners* (1979), 79 Ill. App. 3d 27, 30, 398 N.E.2d 226); a referendum is the right of the electorate to have a proposition submitted for their approval or rejection (see *e.g.*, *City of Litchfield v. Hart* (1940), 306 Ill. App. 621, 624, 29 N.E.2d 678). We have no authority to ignore this fundamental distinction.

■■ The circuit court correctly ruled that "clerk" for these purposes means city clerk of Chicago. Licensees' written revocations, submitted to the clerk in excess of 20 days from the time of filing of the petition, were not timely filed. (Ill. Rev. Stat. 1985, ch. 43, par. 169.) The circuit court did not err in dismissing paragraph 9, count I of licensees' amended complaint.

Additional issues raised in this appeal may otherwise be deemed moot. Because they concern the public interest, they may affect future local option elections, and their resolution will serve as authoritative guidance for public officers, they nevertheless will be addressed

here. *People ex rel. Cairo Turf Club, Inc. v. Taylor* (1954), 2 Ill. 2d 160, 164, 116 N.E.2d 880; *Lotter v. Collagen Corp.* (1983), 115 Ill. App. 3d 696, 699, 450 N.E.2d 1338; *Kohan v. Rimland School for Autistic Children* (1981), 102 Ill. App. 3d 524, 527, 430 N.E.2d 139.

## II

■ Intervenor cross-appeals from the order of October 9, 1986, denying her motion to dismiss count III of licensees' amended complaint, in which it was alleged that the definition of "legal voter" in section 9—1 of the Act (Ill. Rev. Stat. 1985, ch. 43, par. 166) determined the validity of signatures attached to a local option proposition. Section 9—1 provides in relevant part:

> " 'Legal voter,' insofar as the signing of a petition for a local option election is concerned, means a person whose name appears on the poll list of the last general election of county or state officers." (Ill. Rev. Stat. 1985, ch. 43, par. 166.)

From this list, licensees calculated the minimum number of voters necessary to fulfill the 25% requirement of the Act.

Intervenor maintains that the definition of "legal voter" is controlled by section 3—1.2 of the Election Code, which reads:

> "For the purpose of determining eligibility to sign a nominating petition or a petition proposing a public question the [term] *** 'legal voter,' *** as used in this Code or in another Statute shall mean a person who is registered to vote at the address shown opposite his signature on the petition or was registered to vote at such address when he signed the petition." (Ill. Rev. Stat. 1985, ch. 46, par. 3—1.2.)

Intervenor urges that "another statute" be read to include the Act. The argument continues that under section 3—1.2 of the Election Code, a "legal voter" eligible to sign a local option petition would be any registered voter in the precinct (Ill. Rev. Stat. 1985, ch. 46, par. 3—1.2), which is said to be supported by a 1987 amendment to section 3—1.3 of the Election Code. Section 3—1.3, entitled "Percentage of Registered Voters," was amended to read: "This Section does not apply to the determination of the number of signatures required on a petition filed pursuant to Article IX of The Liquor Control Act of 1934." (Ill. Ann. Stat. ch. 46, par. 3—1.3 (Smith-Hurd Supp. 1987).) Intervenor maintains that, had the legislature intended to exempt the Act from section 3—1.2, a similar sentence would have been appended to that paragraph.

Section 28—1 of the Election Code reads in part:

> "Whenever a statute provides for the initiation of a public

question by a petition of electors, the provisions of such statute shall govern with respect to the number of signatures required, *the qualifications of persons entitled to sign the petition,* the contents of the petition, the officer with whom the petition must be filed, and the form of question to be submitted. If such statute does not specify any of the foregoing petition requirements, the corresponding petition requirements of Section 28—6 shall govern such petition." (Emphasis added.) (Ill. Rev. Stat. 1985, ch. 46, par. 28—1.)

This provision demonstrates that when another statute, such as the Act, delineates petition signature requirements, it takes precedence over the Election Code. Only in the absence of specific petition requirements within the statute need reference be made to the Election Code.

There is no conflict between the two statutes. The Act solely regulates the liquor industry in Illinois; citizens determined to limit the retail sale of liquor in their communities are bound by the procedures set forth in the statute. (See Ill. Rev. Stat. 1985, ch. 43, par. 167.) The referenda provisions in the Election Code, by contrast, encompass a much wider terrain of public initiatives, *i.e.,* "all public questions to be voted upon by the electors of the State." (Ill. Rev. Stat. 1985, ch. 46, par. 28—1.) The Election Code referenda procedures apply to all propositions submitted to the public, except when a statute contains its own procedures for conducting referenda. To superimpose the Election Code definition of "legal voter" on the Act, as urged here, would nullify the Act's definition section.

### III

Intervenor argues that even if the Act controls the interpretation of "legal voter," the circuit court erred in permitting the printed 34th precinct register compiled in October 1984 to serve as the "poll list" identified in section 9—1 of the Act. (Ill. Rev. Stat. 1985, ch. 43, par. 166.) The true "poll list," according to intervenor, is the record of voters who actually cast ballots in the preceding general election. Since section 6—66 of the Election Code requires the terms "poll lists" and "poll books," to be construed to apply to such official poll record (Ill. Rev. Stat. 1985, ch. 46, par. 6—66), and "poll record" refers to the official record of persons who have voted in an election (Ill. Rev. Stat. 1985, ch. 46, par. 6—66), intervenor claims that the Election Code definition must govern because the Act does not define "poll list."

A "legal voter" under the Act has been defined as a voter

presently residing in the precinct and who was *registered* for the preceding general election. (*Wheat v. Marcin* (1976), 42 Ill. App. 3d 253, 255, 355 N.E.2d 777.) In this case, licensees purported to refer to a list of registered voters compiled prior to the preceding general election; assuming they used the official printed precinct register (see Ill. Rev. Stat. 1985, ch. 46, par. 6—43), the legal voter requirement was satisfied. "Legal voter" status, therefore, is not limited to one who actually voted in the preceding election.

## IV

■■■ Licensees also appeal the circuit court order entering judgment for intervenor and placing the local option petition on the ballot at the November 4, 1986, election in the 34th precinct. Judgment was entered following intervenor's oral motion for trial at a hearing on October 20, 1986. Licensees produced no evidence to support the remaining allegations in their amended complaint, however.

Although licensees' briefs request reversal of the order, no argument or case law concerning the propriety of the circuit court's action has been presented by the parties, which will be deemed a waiver of alleged error. *Lakeview Trust & Savings Bank v. Estrada* (1985), 134 Ill. App. 3d 792, 814, 480 N.E.2d 1312.

Accordingly, we affirm the circuit court's orders: (1) dismissing paragraph 9, count I of licensees' amended complaint and finding that "clerk" in section 9—1 of the Liquor Control Act means city clerk of Chicago; (2) approving the Act's definition of "legal voter" in local option elections; (3) approving use of the official precinct register to fulfil the legal voter requirement; and (4) entering judgment for intervenor and placing the local option petition on the November 4, 1986, ballot in the 34th precinct.

Affirmed.

SCARIANO, P.J., and STAMOS, J., concur.