622 P.2d 695

**BOARD OF COUNTY COMMISSIONERS OF the COUNTY OF SAN MIGUEL, New Mexico, a Body Politic and Corporate, Plaintiff-Appellee,**

v.

**CITY OF LAS VEGAS, New Mexico, a Municipal Corporation, Defendant-Appellant.**

No. 12704.

Supreme Court of New Mexico.

Dec. 22, 1980.

Roberto C. Armijo, Las Vegas, for defendant-appellant.

Benny Flores, Dist. Atty., Las Vegas, for plaintiff-appellee.

## OPINION

FEDERICI, Justice.

The City of Las Vegas determined that it needed a new landfill for waste disposal. After consultation with and recommendations from the State Environmental Improvement Division, a site was selected. The City leased the site from the Board of Trustees of the Las Vegas Grant. A large part of this site is within one mile of the

City limits, and a small portion is more than one mile from the City limits. Without notice to San Miguel County, the City set up and commenced to operate its landfill in April of 1977. At a special meeting on May 19, 1977, the County passed and adopted an ordinance (Ordinance No. 2.00) requiring special use permits for operation of landfills, among other things. The ordinance went into effect on August 2, 1977. On June 17, 1977, the City filed a petition for writ of certiorari in the district court pursuant to the present Section 3–21–9, N.M.S.A. 1978, to determine the legality of the ordinance. The County moved to quash the writ and dismiss the petition, alleging that certiorari was not a proper form of review for enactment of the ordinance, that the City was not a party aggrieved by a decision of the County because there was no injury nor imminent threat of injury to the City at that time, and that the City was seeking an advisory opinion. The trial court dismissed the petition and quashed the writ upon the County's motion without receiving any evidence in the matter concerning the City's claims. The City appealed but later stipulated to a dismissal of the appeal. The propriety of that judgment is therefore not before us.

The County filed the present suit on July 11, 1978 against the City to enjoin it from operating its landfill. The City answered and counterclaimed, seeking damages in inverse condemnation. The trial court granted the injunction and denied the counterclaim. The City appealed to this Court. We reverse.

We decide the following issues on appeal:

1. Whether the doctrine of res judicata bans consideration of the City's defenses in this suit;

2. Whether the ordinance enacted by the County is a zoning ordinance;

3. Whether the County's ordinance applies to that portion of the City's landfill lying within one mile of the City limits; and

4. Whether the County's ordinance applies to that portion of the City's landfill lying more than one mile from the City limits.

I.

The doctrine of res judicata will apply to bar subsequent litigation of parties involving the identical subject matter and causes of action where the prior action is adjudicated upon the merits. *Town of Atrisco v. Monohan*, 56 N.M. 70, 240 P.2d 216 (1952). However, a judgment against a party because the cause of action was prematurely brought will not bar a subsequent action when the right of action becomes complete. *Houston v. Briggs*, 246 Or. 439, 425 P.2d 748 (1967); *Pratt v. Baker*, 79 Ill.App.2d 479, 223 N.E.2d 865 (1967), *cert. denied*, 389 U.S. 874, 88 S.Ct. 165, 19 L.Ed.2d 157 (1967). Likewise, where a cause is dismissed because of the absence of a cause of action, and the matter was not decided on its merits, subsequent litigation of the issues is not barred. *Goddard v. Security Title Ins. & Guarantee Co.*, 14 Cal.2d 47, 92 P.2d 804 (1939); 46 Am.Jur.2d *Judgments* § 479 (1969).

Here, both suits concern the application of the County's ordinance to the landfill. However, the first suit was dismissed upon the County's motion. This motion claimed that either the City could not properly obtain a determination under the writ of certiorari statute or it could not obtain a determination because there was no actual controversy between the parties at that time.

If there was no actual controversy, it was because the cause of action was not ripe or because there was no cause of action. As shown above, neither of these bases would bar the claims raised in the present suit. The County's res judicata claim must therefore rest on the premise that the court in the first suit held that a writ of certiorari would not lie on behalf of the City. Assuming that the trial court so found, we must consider whether that was an adjudication upon the merits.

This Court considered the meaning of "upon the merits" in *Seward v. D. & R.G.*, 17 N.M. 557, 580, 131 P. 980, 988 (1913), and stated:

The direction to decide ... cases "on their merits" simply means that the court shall decide them on a consideration of their substance and the legal rights involved in opposition to a decision based upon mere defects of procedure or the technicalities thereof. It means the court shall do justice irrespective of informal, technical or dilatory objections or contentions. (Citations omitted.)

In *Paulos v. Janetakos*, 46 N.M. 390, 393, 129 P.2d 636, 637 (1942), this Court held that though there were identical parties in two suits, if the second suit was brought upon different claims or demands, the first suit operates to bar only the "questions, points, or matters of fact in issue ... which were essential to [the first] decision, and upon the determination of which the judgment was rendered. (Citations omitted.)"

█ The present suit was brought by the County seeking to enjoin the City from operating its landfill based upon the ordinance. This issue was never reached in the first case. The first case was not decided upon the merits, nor was the question now raised essential to a determination in the first case. Under these circumstances, res judicata is not applicable to the claims raised in the present suit.

## II

Counties have statutory authority to enact both general police power ordinances and zoning ordinances. However, enactment procedures and regulatory powers differ between the two. *Compare* Sections 4–37–1 to 4–37–9, N.M.S.A. 1978 with Sections 3–21–1 to 3–21–26, N.M.S.A. 1978.

The ordinance adopted by the County contains the following recitals:

WHEREAS, such Board of County Commissioners now is authorized by law to adopt a *zoning ordinance*; and ...

WHEREAS, it will promote health and general welfare and control and abate uses of land detrimental to the health and general welfare of the population of the County to require, *before a general districting for the purpose of zoning*, special

use permits for land uses .... (Emphasis added.).

The ordinance proceeds to require applicants to obtain special use permits for certain specific land uses on a countywide basis. The criteria apparently used to determine whether a permit is issued include finding that the use is essential or desirable to the public convenience or welfare, and that the use is not materially detrimental to public welfare or injurious to other property in the vicinity.

This Court, in *Miller v. City of Albuquerque*, 89 N.M. 503, 505, 554 P.2d 665, 667 (1976), quoting 8 E. McQuillen, *Municipal Corporations*, § 25.01 at 12 (3d ed. 1965), stated that "zoning is defined as governmental regulation of the uses of land and buildings according to districts or zones." The County's ordinance fits within this definition. The district or zone is merely made countywide, which is permissible. *Town of Plainfield v. Hood*, 108 N.H. 502, 240 A.2d 60 (1968).

█ The County argues that this issue is not properly before us because it was not properly preserved for appeal by the City. We may consider whether the County's ordinance is an exercise of the general police power or of its zoning authority because it is a legal issue. The City's failure to request findings on this in the trial court is not fatal. *State ex rel. Garcia v. Martinez*, 80 N.M. 659, 459 P.2d 458 (1969).

## III.

Having determined that this is a zoning ordinance, we next consider whether the County had authority to enact a zoning ordinance applicable to the City's landfill operation. Section 3–21–2, N.M.S.A. 1978 states:

A. a county zoning authority may adopt a zoning ordinance applicable to all or any portion of the territory within the county *that is not within the zoning jurisdiction of* a municipality;

B. a municipal zoning authority may adopt a zoning ordinance applicable to the territory within the municipal boundaries *and may adopt and submit a zoning*

*ordinance to an extraterritorial zoning commission* appointed as provided in Section 3–21–3 NMSA 1978, which ordinance is applicable to all or any portion of the territory *within its extraterritorial zoning jurisdiction* which is within:

. . . . .

(3) one mile of the boundary of any municipality having a population of one thousand five hundred or more but less than twenty thousand persons, provided such territory is not within the boundaries of another municipality . . . . (Emphasis added.)

▇▇ Under this statute, that area within one mile of the City limits of Las Vegas is within the extraterritorial zoning jurisdiction of the City provided certain statutory procedures are followed. The statute does not grant zoning authority over this one-mile area to the County, though the extraterritorial zoning commission provided for in Section 3–21–3 assures the County of a voice in any decision reached by that commission. Statutes are to be read and given effect as written, with the words used to be given their ordinary and usual meaning, unless a contrary intent is clearly shown. *Gonzales v. Oil, Chemical and Atomic Workers Int. U.*, 77 N.M. 61, 419 P.2d 257 (1966). Neither the above statute nor any of the other zoning statutes in Sections 3–21–1 to 3–21–26 give the County jurisdiction to adopt a zoning ordinance within one mile of the Las Vegas City limits.

IV.

The next issue we consider is whether the County ordinance affects that portion of the landfill lying more than one mile outside the City limits. We find no statute which prohibits the County's authority to zone that area. However, any such zoning ordinance must be properly enacted. The City points to Section 3–21–5, which requires the zoning authority to adopt regulations and restrictions in accordance with a comprehensive plan. The City argues that the County's ordinance is not in accordance with such a plan.

A comprehensive plan has been defined synonymously with a master plan to mean:

[A] master design for the physical development of the territory of the city . . . . [A] plan of the division of the land between public and private uses, specifying the general location and extent of new public improvements, grounds and structures . . . and, in the case of private developments, the general distribution among various classes of uses, such as residential business and industrial uses. The plan should be designed for a considerable period in the future, twenty-five to fifty years. It should be based, therefore, upon a comprehensive and detailed survey of things as they are at the time of the planning, such as the existing distribution of existing developments, . . . the trends toward redistribution and growth . . . .

3 R. Anderson, *American Law of Zoning 2d* § 21.03 (1977), quoting Kent, *The Urban General Plan*, 30 (1964) with approval.

Anderson further states:

Whatever may be the desirable balance between generality and specificity, a master or comprehensive plan commonly consists in [sic] a verbal and graphic statement of (1) the physical and human resources of the community, (2) the goals sought by the community, (3) plans for the mobilization of the resources to achieve the goals, and (4) means for implementing the plans. (Footnote omitted.)

A major reason for requiring a comprehensive plan is to ensure that there will not be "loose determinations of land utilization of comparatively small sections of the community." 82 Am.Jur.2d *Zoning and Planning* § 69 (1976).

We are mindful that a comprehensive plan may be found within the ordinance itself where the zoning authority has not enacted a prior comprehensive plan. *Damick v. Planning and Zoning Commission*, 158 Conn. 78, 256 A.2d 428 (1969), and that absence of a formally adopted comprehensive plan does substantially weaken the pre-

sumption of regularity of any zoning ordinance enacted without it. *Raabe v. City of Walker*, 383 Mich. 165, 174 N.W.2d 789 (1970). Here, the County did not formally adopt a comprehensive plan. The disputed zoning ordinance mentions that no districting within the County has been made because "certain land uses have been found not able to be permitted in any specific district subject to zoning regulation." However, the ordinance then goes on to state that certain uses must be controlled "before a general districting for the purpose of zoning." The ordinance is contradictory. The latter statement admits that a general districting is contemplated. Implicit in such a statement is that any contemplated comprehensive planning was not yet completed.

The record indicates that the County has a Planning and Zoning Commission, yet the ordinance was never considered by that commission. The ordinance was passed at a *special* meeting of the County Commission. While there is testimony in the record indicating that the commissioners considered this ordinance prior to its passage, the testimony also indicates that a zoning ordinance was not formulated until the City began to operate its landfill, and that the ordinance was enacted in an effort to control the City's use of the land for that purpose.

■ There was no evidence before the trial court demonstrating that the ordinance included a comprehensive plan. On the contrary, both the express statements in the ordinance and the evidence before the trial court show that the disputed ordinance was not enacted in accordance with such a plan. Therefore, the ordinance must fall. It does not apply to that portion of the City landfill lying more than one mile from the City limits.

The County of San Miguel does not have authority to zone within one mile of the City limits of Las Vegas. The zoning ordinance that the County adopted is invalid because it is not in conformity with a comprehensive plan. The trial court is reversed

and directed to enter judgment for the City in conformity herewith.

IT IS SO ORDERED.

EASLEY, Senior Justice, and PAYNE, J., concur.