634 P.2d 685

**CITY OF SANTA FE, Historic Neighborhood Association, Southeast Neighborhood Association, Old Don Gaspar Neighborhood Association, Historic Hillside Area Neighbors, Tano Road Association, Rodeo Road Association, Plaintiffs-Appellees,**

v.

**Alex ARMIJO, the Commissioner of Public Lands, State of New Mexico, Defendant-Appellant.**

**No. 13388.**

Supreme Court of New Mexico.

Oct. 5, 1981.

Jeff Bingaman, Atty. Gen., Thomas L. Dunigan, Deputy Atty. Gen., Santa Fe, for defendant-appellant.

Coppler & Walter, Frank Coppler, Richard C. Bosson, Santa Fe, for plaintiffs-appellees.

## OPINION

RIORDAN, Justice.

The City of Santa Fe (city) and several private neighborhood associations brought an action against the Commissioner of Public Lands seeking to enjoin the Commissioner from maintaining an oil field pumping rig on the premises of the State Land Office Building in violation of Santa Fe's his-

torical district zoning ordinances (ordinances). Santa Fe, N.M., Code ch. 36, art. XXVI, §§ 36–312 through 36–324 (1973). The plaintiffs alleged that the Commissioner failed to comply with the ordinances by not obtaining a permit before placing the pumping rig on the premises. The district court found in favor of plaintiffs and held that the Commissioner was to comply with the ordinances because New Mexico's Historic District Act (Act), §§ 3–22–1 through 3–22–5, N.M.S.A. 1978, empowered the city to apply its ordinances to state agencies, institutions and officials. The Commissioner appeals. We reverse.

A number of issues are raised on appeal; however, one is dispositive: Do Santa Fe's historical zoning ordinances apply to the Commissioner of Public Lands' building?

■ There are a number of general principles governing a municipality's authority to apply zoning requirements to state land. A state governmental body is not subject to local zoning regulations or restrictions. *Matter of Suntide Inn Motel,* 563 P.2d 125, 127 (Okl.1977). A city has no inherent right to exercise control over state land. *See, City of Santa Fe v. Gamble-Skogmo, Inc.,* 73 N.M. 410, 413, 389 P.2d 13, 15 (1964); *Town of Mesilla v. Mesilla Design Center & Book Store,* 71 N.M. 124, 376 P.2d 183 (1962). A city's power to zone state property must be delegated to the city by state statute. Statutes granting power to cities are strictly construed, and any fair or reasonable doubt concerning the existence of an asserted power is resolved against the city. *Village of River Forest v. Midwest Bank & Trust Co.,* 12 Ill.App.3d 136, 139, 297 N.E.2d 775, 777 (1973). Cities have only such power as statutes expressly confer without resort to implication. *Sanchez v. City of Santa Fe,* 82 N.M. 322, 481 P.2d 401 (1971). Thus, no power or authority may be claimed by a municipality by inference or implication from a statute. Municipalities have only those powers *expressly* delegated by state statute.

In applying the above principles, we must determine which state statute authorized Santa Fe's historical district zoning ordi-

nances. The ordinances were enacted October 30, 1957. The only state statutes authorizing municipality zoning at that time were the "Zoning Regulations," §§ 14–28–9, 14–28–10 and 14–28–11, N.M.S.A. 1953, which were first enacted in 1927. These statutes were repealed by 1965 N.M. Laws ch. 300 and were replaced by the same 1965 Act as §§ 14–20–1 and 14–20–2, N.M.S.A. 1953 (Cum.Supp.1965) (now codified as §§ 3–21–1 and 3–21–2, N.M.S.A. 1978). We held in *City of Santa Fe v. Gamble-Skogmo, Inc., supra,* that Santa Fe's historical district zoning ordinances were enacted under these statutes.

These "Zoning Regulations" gave the municipality a general grant of zoning powers. However, the regulations do not give the municipalities express power to apply zoning regulations to state land. Therefore, the city's ordinances as originally enacted do not apply to state land. The trial court found, however, that the state's Historic District Act authorized the city's ordinances.

The state's Historic District Act was enacted in 1961, (1961 N.M. Laws ch. 92, §§ 1 through 5, codified as §§ 14–50–1 through 14–50–5, N.M.S.A. 1953 (Cum.Supp.1961); repealed by 1965 N.M. Laws ch. 300 and reenacted by the 1965 Act as §§ 14–21–1 through 14–21–5, N.M.S.A. 1953 (Cum. Supp.1965) (now codified as § 3–22–1 through § 3–22–5) four years after the enactment of the Santa Fe ordinances. The only way in which the Act could have authorized, validated or extended the ordinances' application to state property, is by ratification. In order to validate or extend by ratification the application of a previously enacted municipal ordinance, two requirements must be satisfied.

▮▮ The first requirement is that there must have been some previously existing state statute which authorized the enactment of the particular municipal ordinance. Curative statutes can validate irregular exercise of power where the initial power to enact such an ordinance has already been granted. However, a curative statute cannot ratify a void municipal ordinance nor

validate an application of an ordinance where there was no power to enact the ordinance in the first instance. *209 Lake Shore Drive Bldg. Corp. v. City of Chicago,* 3 Ill.App.3d 46, 51, 278 N.E.2d 216, 220 (1971); *Village of River Forest v. Midwest Bank & Trust Co., supra.* This requirement was not satisfied. When the city enacted its historical district zoning ordinances, there were no state statutes authorizing the application of such an ordinance to state property. There were general zoning laws at the time authorizing the enactment of the ordinances, *City of Santa Fe v. Gamble-Skogmo, Inc., supra,* but these laws did not permit application of ordinances to state property. Any attempted application of such ordinances to state property prior to the enactment of the Historic District Act would have been invalid.

The second requirement is that the state statute must name or in some way identify the ordinance which is intended to be validated or extended by ratification. *State ex rel. Brelsford v. Retirement Board,* 41 Wis.2d 77, 84, 163 N.W.2d 153, 156 (1968); *Village of River Forest v. Midwest Bank & Trust Co., supra.* The state Act does not expressly refer to the historical district zoning ordinances of the City of Santa Fe nor does it refer generally to historical district zoning ordinances promulgated by municipalities prior to its enactment. This requirement is not met.

Further, the City of Santa Fe argues that in 1973 it "readopted" its historical zoning ordinances under the authority of the Historic District Act and thereby cured the invalidity of the ordinance with respect to its purported application to state property. This argument ignores the stated intention of the city in adopting the 1974 code. The intent of the council was clearly stated in Santa Fe, N.M. Code ch. 1, § 1–3 (1973). *Sec. 1–3. Provisions considered as continuations of existing ordinances.*

The provisions appearing in this Code, so far as they are in substance the same as those of the 1953 Code and all ordinances adopted subsequent to the 1953 Code and included herein, shall be considered as

continuations thereof and not as new enactments.

Thus, in accordance with Section 1–3 of the City Code, the ordinances were merely continued unaffected by the 1973 codification and were not "reenacted" or "readopted" by the council in 1973.

It is true that a municipality may cure the invalid application of a city's ordinance by subsequent council enactment. The proceedings to cure such a defect must be undertaken with the full knowledge of the invalidity and with an intent to remedy the invalidity by the council's legislative action. 5 E. McQuillin, *Municipal Corporations*, § 16.93 (3rd rev. ed. 1969). "Ratification [of an invalid municipal ordinance] to be effective, must be made with full knowledge of all the facts relating to the act ratified." *McCracken v. City of San Francisco*, 16 Cal. 591, 626 (1860). There is no evidence that the city council was aware of the defect in the historical district ordinances and intended to cure them by their actions in 1973.

We do not need to address the question as to whether the wording of the Historic District Act allows the regulation of state land by a municipality. However, as we have already stated, a city has only such power as a state statute *expressly* confers without resorting to implication. *Sanchez v. City of Santa Fe, supra.* If the state's Act is to include the regulation of state land, then it will be up to the municipality to show where *express* authority was conferred on them.

The decision of the district court is reversed.

IT IS SO ORDERED.

FEDERICI, J., concurs.

SOSA, Senior Justice, specially concurs.

SOSA, Senior Justice, special concurring.

I concur only in the result reached by the majority opinion. I agree that, under the facts of this case, the City of Santa Fe had no zoning ordinances applicable to state property. This is true, however, not because they lacked the requisite authority to enact historical district zoning ordinances applicable to state property, but because they lacked a valid ordinance with which to do so. The City's 1973 recodification was not a reenactment of the City's zoning ordinances enacted in 1957 pursuant to the statutory predecessor of §§ 3–21–1 and 3–21–2, which did not apply to state land. If the City had reenacted its ordinances subsequent to 1961 when the state authorized, in broad and general plenary language, the power of municipalities to regulate *all* lands, the City's ordinances would apply to the State Land Office.

Once the Santa Fe City Council reenacts the ordinances, they will apply to state land pursuant to the Historic District Act. Section 3–22–2 of the Act makes it very clear that municipalities have full and complete power to regulate *historical* districts in furtherance of the historical heritage of this state.

The legislature of the state of New Mexico hereby declares that the historical heritage of this state is among its most valued and important assets, and that it is the intention of Sections 3–22–1 through 3–22–5 N.M.S.A. 1978, to *empower * * * municipalities * * * with as full and complete powers to preserve * * the historic areas * * * as it is possible for this legislature to permit under the constitution * * *.* (Emphasis added.)

There is nothing in the statute which limits its applicability only to private land. Indeed, had the Legislature intended for municipalities to be able to zone only private land, there would have been no need to enact the Historic District Act, because §§ 3–21–1 and 3–21–2 already enabled municipalities to zone private land. "Full and complete powers" includes the power over state land lying within historic areas.