888 P.2d 996

**Joseph S. EDWARDS, Viola K. Edwards, Patrick Edwards, and Connie Edwards, on behalf of themselves and all others similarly situated, Plaintiffs–Appellants,**

v.

**BOARD OF COUNTY COMMISSIONERS OF the COUNTY OF BERNALILLO, New Mexico, a body politic and corporate, and Albert Valdez, Patrick Baca, Eugene Gilbert, Patricia Cassidy, Jacqueline Schaefer, and Barbara Seward, et al., Defendants–Appellees.**

No. 15176.

Court of Appeals of New Mexico.

Dec. 2, 1994.

Hessel E. Yntema, III, Oman, Gentry & Yntema, P.A., Albuquerque, for plaintiffs-appellants.

Timothy R. Van Valen, George R. McFall, Modrall, Sperling, Roehl, Harris & Sisk, P.A., Albuquerque, for defendants-appellees.

Anita P. Miller, Lora A. Lucero, Anita P. Miller, P.C., Albuquerque, for amicus curiae New Mexico Ass'n of Counties.

## OPINION

APODACA, Judge.

Plaintiffs appeal the trial court's judgment based on its holding that Defendants Bernalillo County Board of Commissioners and the Commissioners, individually, (the County) had zoning authority that included Plaintiffs' properties. Plaintiffs raise six issues on ap-

peal; whether: (1) collateral estoppel prevented the County from litigating the issue of whether the County's Ordinance 213 was valid; (2) the County had statutory authority to enforce Ordinance 213 against Plaintiffs in 1990–93; (3) a "saving clause" in 1975 N.M.Laws, Chapter 312, Section 10, saved Ordinance 213 in the extraterritorial area; (4) Plaintiffs' uses of their property existing before the County entered into a Joint Powers Agreement with the City of Albuquerque (the City) were effectively grandfathered; (5) NMSA 1978, Sections 3–21–1 to –26 (Repl. 1985 & Cum.Supp.1994), apply to Ordinance 213 in the extraterritorial area; and (6) assuming the County had zoning authority over Plaintiffs' properties, the County's exercise of that authority was proper without an extraterritorial zoning commission.

We rephrase the dispositive issues as follows: (1) whether collateral estoppel prevented the County from litigating the issue of the validity of Ordinance 213, (2) what was the effect of the 1975 saving clause on Ordinance 213, and (3) what was the effect of the legislature's subsequent amendments to the zoning statutes and the effect of the County's amendments to Ordinance 213 on the ordinance's validity. We hold that the County was not estopped from litigating the issue of the ordinance's validity. We also hold that the 1975 saving clause saved Ordinance 213 in its entirety and that it was not impliedly repealed by later amendments to the zoning statutes. At oral argument, we inquired of counsel whether any amendments to the ordinance were material to the facts in this appeal. Based on counsel's replies, we determine that no amendments to the ordinance were material to this appeal. Thus, we do not address this question. We affirm the trial court's decision that the County had authority to enforce Ordinance 213 against Plaintiffs' properties in 1990–93.

## I. BACKGROUND

Plaintiffs own property in the extraterritorial area of Bernalillo County, outside the municipal limits of the City. See § 3–21–2(B)(1) and NMSA 1953, § 14–18–5 (defining the extraterritorial zoning area, both now and at the time of the enactment of the

ordinance in question, respectively). In 1990 and 1991, the County cited Plaintiffs Patrick and Connie Edwards for violating Ordinance 213, which allegedly applied to the extraterritorial area. The County cited Plaintiffs Joseph and Viola Edwards for ordinance violations in 1993. Following the citations, Plaintiffs filed a cause of action for declaratory relief, injunctive relief, and damages for the County's allegedly wrongful zoning acts. In their complaint, Plaintiffs contended that, under prior court decisions, the County lacked statutory zoning authority over Plaintiffs' properties before 1991. Plaintiffs also contended that their properties were not zoned because the County had not validly enacted or ratified Ordinance 213 as to the extraterritorial area since obtaining zoning authority pursuant to the 1991 statutory amendments and the execution of a Joint Powers Agreement with the City. Alternatively, Plaintiffs contended that their uses of their properties were grandfathered because they preexisted September 18, 1991, the effective date of the Joint Powers Agreement.

Initially, the trial court ruled in favor of Plaintiffs. In a motion for reconsideration, the County argued that a saving clause in 1975 N.M.Laws, Chapter 312, Section 10, saved the validity of Ordinance 213, and the County therefore had statutory zoning authority over Plaintiffs' properties in the extraterritorial area since 1973. The trial court granted the motion and ultimately entered its decision in favor of the County. Additional facts will be discussed as relevant to our discussion.

## II. DISCUSSION

### A. Was the County Collaterally Estopped from Litigating the Issue of the Validity of Ordinance 213?

█ Plaintiffs contend that the trial court erred in not applying the doctrine of collateral estoppel, thus allowing the County to relitigate the issue of the validity of Ordinance 213 in the extraterritorial area. In so arguing, Plaintiffs rely on several district court decisions and unpublished memorandum opinions of this Court. These court decisions involved litigation between the County and different parties not including Plaintiffs.

This Court has stated that "ordinarily the doctrine of collateral estoppel should not bar a state agency from arguing a point of law on the ground that it lost on that issue in prior litigation with a different party." *Antillon v. New Mexico State Highway Dep't*, 113 N.M. 2, 4, 820 P.2d 436, 438 (Ct.App.1991) (citing *Restatement (Second) of Judgments* § 29(7) and cmt. i (1982)). Comment i clarifies that the rule does not apply solely to state agencies, but rather to "governmental agenc[ies] responsible for continuing administration of a body of law applicable to many similarly situated persons." The County is such a governmental agency. We thus hold that the trial court correctly determined that collateral estoppel did not apply to prevent the County from litigating the legal issue of the validity of Ordinance 213.

### B. Was Ordinance 213 Saved by the 1975 Saving Clause?

█ Before 1973, NMSA 1953, Section 14-20-2(A) (Repl.Vol. 3, Part 2) stated that "[a] county zoning authority may adopt a zoning ordinance applicable to all or any portion of the territory, within the county that is not within the subdividing and platting jurisdiction of a municipality." At this time, Section 14-18-5 had set the planning and platting jurisdiction of Albuquerque as extending five miles beyond its boundaries. Thus, Bernalillo County did not have authority to zone Plaintiffs' property.

In 1973, however, the legislature enacted 1973 N.M.Laws, Chapter 108, codified as NMSA 1953, Section 15-36-26 (Pocket Supp. 1973) (the 1973 Act), under which the County adopted Ordinance 213. Section 1 of the 1973 Act stated:

A. Notwithstanding the provisions of Sections 14-20-2 and 14-20-2.1 NMSA 1953, Class A counties may enact zoning ordinances relative to the areas of the county not within the boundaries of any municipality but within the planning and platting jurisdiction of a municipality, provided that such ordinances may be superseded by an ordinance of the municipality.

B. Class A counties are granted the same powers to enact all other ordinances

that are granted to municipalities except for those powers that are inconsistent with statutory or constitutional limitations placed on counties.

The 1973 Act further provided that the Act took effect immediately. Plaintiffs do not dispute that Ordinance 213 was validly enacted under the 1973 Act.

The 1973 Act was repealed one and one-half years later by 1975 N.M.Laws, Chapter 312, codified as NMSA 1953, §§ 15–36A–2 through –9 (Repl.Vol. 3, Part 2) (the 1975 Act), in Section 11. Section 1 of the 1975 Act stated that "[a]ll counties are granted the same powers that are granted municipalities except for those powers that are inconsistent with statutory or constitutional limitations placed on counties." Because of the repeal of the 1973 Act, the effect of Section 1 of the 1975 Act was to revive the effectiveness of Section 14–20–2(A), proscribing any county authority to zone in the extraterritorial area. In Section 10 of the 1975 Act, however, the Legislature enacted the following saving clause (the saving clause): "SAVING CLAUSE.—All ordinances enacted pursuant to any law repealed by this act are not repealed but shall have the same effect as if enacted pursuant to this act." The saving clause was not codified, but it presently appears in the annotations to NMSA 1978, Section 4–37–9 (Supp.Pamp.1994).

The parties dispute the effect of this saving clause, thus giving rise to what is the central question in this appeal. On the one hand, Plaintiffs contend the saving clause saved Ordinance 213 only to the extent that it would have been valid under the laws in effect as of the effective date of the 1975 Act. Specifically, Plaintiffs argue that the ordinance remained valid for the areas of the County outside the extraterritorial area but was invalid inside the extraterritorial area. On the other hand, the County reasons that the saving clause explicitly saved any ordinance enacted pursuant to the 1973 Act, including Ordinance 213, and that any such ordinance remained in full force. We agree with the County's argument.

In construing a statute, our primary concern is to determine the intent of the legislature. *State ex rel. Klineline v.*

*Blackhurst,* 106 N.M. 732, 735, 749 P.2d 1111, 1114 (1988). To accomplish this goal, we look primarily to the language used, but may also consider the history and background of the legislation. *Id.* We give the words used in the statute their ordinary meaning unless the legislature has indicated otherwise. *Id.* The legislature is presumed to know the existing law. *City Comm'n v. State ex rel. Nichols,* 75 N.M. 438, 444, 405 P.2d 924, 928 (1965).

The parties agree that, under the 1975 saving clause, Ordinance 213 was saved in some manner. The issue presented to us is to what extent the ordinance was saved. In *Board of Education v. Citizens' National Bank,* 23 N.M. 205, 167 P. 715 (1917), our Supreme Court considered the effect of a saving clause on repealed legislation that affected the authority of school districts to issue bonds. Certain statutes had provided the authority and procedures for local boards of education to issue bonds. *Id.* at 211–12, 167 P. at 717–18. In 1917, the legislature amended and repealed the legislation affecting schools, including the pertinent statutes. *Id.* at 220, 167 P. at 721. The amendments provided for a new system of rural school districts, but not for municipal school districts. *Id.* However, the 1917 legislation contained a saving clause stating that "[n]othing contained in this act shall be construed to divest boards of education in incorporated territory of any of the powers possessed by them, immediately preceding the date of the passage of this act." *Id.* (quoting N.M.Laws 1917, ch. 105, § 10). Our Supreme Court held that municipal school districts could still issue bonds even though the enabling statute had been repealed and the new legislation did not grant them that power. The Court reasoned:

> The question presented is whether or not the original sections were saved for municipal school districts by the [saving clause]. It is contended ... that the amended sections entirely supplanted and superseded the original section for all purposes. No case directly in point on this proposition has been cited by either side, or discovered by any member of the court after diligent research. There are many cases, however,

where statutes have been repealed or amended, and the repealing or amended statute has contained a provision to the effect that such repeal or amendment shall not affect any pending case, or worded "a right which has accrued under the former statute." These provisions are legally termed "saving clauses," and their effect is to continue in force and effect the old [statute] in so far as the rights saved by the new statute are concerned. On principle we cannot see any objection to the Legislature in amending a statute to continue in force and effect the previous statute for certain specified purposes. If it is competent to continue the old statute in force for the purpose of pending suits or to protect accrued rights, it would clearly be competent to continue the old statute in force for purposes not covered by the amended statute. Here the Legislature, by the amended section, was intending to make provisions for rural schools, and did not desire to affect or alter in any manner the provisions of the old section in so far as the same prescribed the procedure for municipal districts. Hence we conclude that the two sections in question are still in force in so far as municipal school districts are concerned, and that the right of said districts to proceed thereunder was not affected by the amended statute, but was specifically saved to such districts.

*Id.* at 220–21, 167 P. at 721.

■ Under the rationale and holding of *Board of Education,* the legislature can continue previous legislation in force for certain purposes not covered by the new legislation even if the original enabling legislation has been repealed. For the reasons that follow, we conclude that the saving clause at issue in this case had a similar purpose.

For the reasons noted below, we conclude that the saving clause saved Ordinance 213 in its entirety and as it affected the extraterritorial area. Plaintiffs contend that the latter part of the 1975 saving clause, the words "but shall have the same effect as if enacted pursuant to this act," indicates that the legislature intended to save the ordinance only as it related to areas of the County *outside* the extraterritorial area but, pursuant to the new

legislation, did not intend the ordinance to have any effect within the extraterritorial area. Otherwise, Plaintiffs argue, the last part of the 1975 saving clause is surplus language. We disagree with Plaintiffs' contentions.

In scheduling oral argument, we posed the following question to the parties:

Is the legislative history of the saving clause in this appeal of any assistance in interpreting the language of the clause? More specifically, what was the origin of the phrase "but shall have the same effect [as] if enacted pursuant to this act." For example, did such phrase originate from 1955 N.M.Laws, Chapter 4, Section 16 (codified as NMSA 1953, § 15–36–23), which was repealed by 1975 N.M.Laws, Chapter 312, Section 11; and if so, what was the effect, if any, of Section 15–36–23? Does the phrase have any significant or independent meaning other than to add emphasis to the legislature's intent to save the ordinances so that they would continue in effect after 1975?

Although it is not clear to us whether or not the disputed phrase owes its origin to the language of Section 15–36–23, a comparison of that section and the saving clause here provides us with some insight into a reasonable interpretation of the disputed phrase. Section 15–36–23, entitled "Saving Clause— Ordinances Enacted Under Prior Laws," stated: "All ordinances enacted pursuant to any law hereby repealed by any board of county commissioners ... are not repealed *but are specifically hereby given full force and effect as though enacted under the provisions of this act.*" (Emphasis added.) The 1955 Act did little more than change the nomenclature from "county of the sixth class" to "H class county." The 1955 Act appeared to contain no substantive changes, no change in procedures for enacting ordinances, and no new restrictions placed on the power of H class counties. Thus, we conclude that the underscored language of Section 15–36–23 quoted above was simply to add emphasis to the words preceding it—to make clear that the repeal was not intended to undo ordinances that had already been adopted.

In this appeal, on the other hand, we believe that the disputed phrase had material significance other than simply to add emphasis to the legislature's intent to save existing ordinances, although emphasis appears to be its primary function. We first observe that the 1975 Act did not itself prohibit or restrict a county from adopting an ordinance. Instead, another statute previously enacted, Section 14–20–2, prohibited a county from enacting an ordinance governing any territory that is within a municipality's zoning jurisdiction, which includes any extraterritorial zone. This point is important because the disputed phrase refers specifically to "this act," meaning the 1975 Act only. In contrast, we observe that the legislature did not use the words "but shall have the same effect as if enacted pursuant *to this act or any other law,*" or "but shall have the same effect as if enacted pursuant *to any laws in effect at this time.*" Had the legislature done so, it would be reasonable for us to interpret the hypothetical language to prohibit operation of Ordinance 213 within the extraterritorial zone, because such prohibition is expressed elsewhere in the statutes. This leads us to conclude that, in choosing the phrase the legislature actually used, it intended to save any existing ordinance as if such ordinance had been adopted pursuant to the *procedures* outlined in the 1975 Act for the enactment of such ordinances. Consequently, whereas the phrase in the 1955 Act was purely surplusage, the phrase in dispute in this appeal was not used solely for the purpose of adding emphasis to the previous words of the saving clause, but instead was intended to signify that any ordinances existing at the time the 1975 Act was enacted would continue in effect, as if they had been adopted under the *procedural requirements* of the 1975 Act.

Additionally, there is nothing in the 1975 Act to indicate that the legislature intended to require any county that had passed an ordinance under the 1973 Act to reenact or validate any such ordinance. *Cf.* 1977 N.M.Laws, ch. 80, § 4 (when legislature repealed existing extraterritorial zoning statute, it provided that municipal zoning ordinances adopted pursuant to the previous legislation and that applied to the extraterritorial area were "confirmed and validated" and

would be "controlling as to zoning procedures within the designated extraterritorial area, until such time as acted on by the extraterritorial zoning commission having jurisdiction."). Thus, although *new* ordinances could not be established without following the procedures of the 1975 Act, the legislature must have anticipated that *existing* ordinances would continue to cover zoning in extraterritorial areas unless superseded by a municipal zoning ordinance.

■ We thus determine that, in using the language Plaintiffs contend is "surplus," the legislature's intent was that ordinances passed pursuant to the 1973 Act would be as valid as if they had been passed pursuant to the 1975 Act. Otherwise, we would be required to conclude that, with one stroke of the pen, the legislature both expressly saved Ordinance 213 and other ordinances passed under the 1973 Act and simultaneously implicitly repealed the County's authority to enforce Ordinance 213 in the area directly adjoining New Mexico's largest city without expressly directing the County or the City to adopt a new ordinance. *Cf.* 1977 N.M.Laws, ch. 80, § 4 (allowing municipalities period of time in which to enact new zoning ordinances in accordance with new legislation). As a general rule, implied repeals of legislation are disapproved. *Hall v. Regents of the Univ. of N.M.,* 106 N.M. 167, 168, 740 P.2d 1151, 1152 (1987). Without more explicit language indicating that the legislature intended the result urged upon us by Plaintiffs, we decline to hold that the legislature implicitly and without warning intended to leave the extraterritorial area unzoned. The consequence of such a holding would be grave indeed, perhaps wreaking havoc on the permanency or consistency of necessary zoning requirements.

Plaintiffs also focus on the provisions of newly enacted Section 15–36A–1, which includes the language: "The board of county commissioners may make and publish any ordinance to discharge these powers not inconsistent with statutory or constitutional limitations placed on counties." Plaintiffs contend that for any ordinance to be "enacted pursuant to this Act," as set forth in the saving clause, the ordinance must be consis-

tent with the statutory and constitutional limitations placed on counties at the time that Chapter 312 became law. Taken out of context, the language of the saving clause could readily bear this interpretation. As a practical matter, however, it seems unlikely that the legislature intended to require that every previously enacted ordinance be checked against the laws in effect in 1975 to determine its proper scope. Additionally, as we previously noted, courts have long protected against repeals of legislation by inadvertence. *See Hall,* 106 N.M. at 168, 740 P.2d at 1152. Similarly, we resist any interpretation of the 1975 Act that requires looking outside of that Act to other statutes or constitutional provisions to determine whether an otherwise saved ordinance has been repealed in whole or in part.

Finally, we disagree with Plaintiffs' contention that the saving clause failed to comply with the standards set forth in *City of Santa Fe v. Armijo,* 96 N.M. 663, 634 P.2d 685 (1981). *City of Santa Fe* involved the issue of whether a Santa Fe historical zoning ordinance applied to a state-owned building. *Id.* at 664, 634 P.2d at 686. The ordinance had been passed before the enactment of the Historic District Act (1961 N.M.Laws, ch. 92, §§ 1 through 5, codified as NMSA 1953, §§ 14–50–1 through –5 (Cum.Supp.1961)), pursuant to state statutes that granted municipalities the general power to zone. *City of Santa Fe,* 96 N.M. at 665, 634 P.2d at 687. The general zoning statutes did not authorize municipalities to zone state property. *Id.* Our Supreme Court addressed the issue of whether the later-enacted Historic District Act could authorize application of Santa Fe's ordinance by setting forth two requirements:

> The first requirement is that there must have been some previously existing state statute which authorized the enactment of the particular municipal ordinance....

> The second requirement is that the state statute must name or in some way identify the ordinance which is intended to be validated or extended by ratification....

*Id.* The state statute can either identify the ordinance specifically or generally. *Id.* Both requirements for validation or extension by ratification are met in this case.

Ordinance 213 was passed in accordance with the 1973 Act, and it was generally referred to in the saving clause, which saved any ordinance passed in accordance with a repealed statute.

For these reasons, we conclude that, although the enabling legislation was repealed by the 1975 Act, the 1975 saving clause effectively caused Ordinance 213 to remain in force in the extraterritorial area.

## C. Was Ordinance 213 Repealed by Subsequent Statutory Amendments?

■ Even though we have concluded that the saving clause permitted Ordinance 213 to remain in full force after repeal of the enabling legislation, we must now consider the effect, if any, of subsequent legislative amendments to the zoning statutes. For the reasons that follow, we hold that Ordinance 213 was not repealed by later statutory changes.

No provision in subsequent legislation expressly repeals Ordinance 213, requires the County to reenact or ratify Ordinance 213, or revokes the County's authority to enforce Ordinance 213 in the extraterritorial area. Therefore, the question before us is whether the subsequent extraterritorial zoning legislation implicitly revoked Ordinance 213 or the County's authority to enforce the ordinance in the extraterritorial area.

Plaintiffs contend that the 1977 Act, which provided for extraterritorial zoning commissions, *see* 1977 N.M.Laws, ch. 80 (recodified at NMSA 1978, § 3–21–2 through –4 (Repl. 1985 & Cum.Supp.1994)), effectively repealed all prior laws and ordinances governing the extraterritorial area. But the Act did not limit the County's authority to enforce any existing, validly enacted ordinances. In fact, the opposite is true. The County still had authority to enforce its ordinances throughout its territory except within the limits of a municipality. *See* 1975 N.M.Laws, ch. 312, § 2 (enacting NMSA 1953, § 15–36A–2 (Repl.Vol. 3, Part 2)). Former Section 15–36A–2 has remained unchanged and is now codified at NMSA 1978, Section 4–37–2 (Repl.Pamp.1992). We are unable to locate any statute revoking or otherwise limiting

the County's authority to enforce its ordinances.

Plaintiffs point to NMSA 1978, Section 3–21–4 (Repl.1985), in support of their argument that, even if Ordinance 213 was effective within the extraterritorial area, the County could not unilaterally enforce the ordinance. Rather, Plaintiffs contend that the County was required to enforce the ordinance through the extraterritorial zoning commission. We disagree with Plaintiffs' interpretation of Section 3–21–4. That statute is applicable only to a "zoning ordinance adopted by a joint municipal-county zoning authority." Section 3–21–4(A). Ordinance 213 is not such an ordinance. Besides, even if Section 3–21–4 was applicable to Ordinance 213, it allows for enforcement of such ordinances "by appropriate procedures of *either* the municipality or the county." Section 3–21–4(A) (emphasis added). It does not explicitly limit enforcement to the extraterritorial zoning commission. We are thus not persuaded that Section 3–21–4 prevented the County from enforcing Ordinance 213.

Neither *Waksman v. City of Albuquerque,* 102 N.M. 41, 690 P.2d 1035 (1984), nor *Board of County Commissioners v. City of Las Vegas,* 95 N.M. 387, 622 P.2d 695 (1980), requires a different result. *Waksman* involved a municipality's attempt to extend a city tax ordinance, thus effectively exceeding a subsequently enacted limitation on the amount of liquor license tax the municipality could collect. 102 N.M. at 42, 690 P.2d at 1036. Our Supreme Court held that the municipality could not exceed the statutory limit of the tax because "[a] municipality lacks the power to alter, by ordinance, a legislatively-mandated tax limitation." *Id.* at 43, 690 P.2d at 1037. *Waksman* is distinguishable from the facts of this case because the legislation at issue in *Waksman* applied to both existing and prospective ordinances and did not include a saving clause that would have allowed the municipality's existing ordinance to continue in force.

*Board of County Commissioners* is also distinguishable. Although that case involved the alleged authority of a county to zone in the extraterritorial area of the City of Las Vegas, the county could point to absolutely

no authority for it to zone in that area. *Board of County Commissioners* did not involve consideration of an ordinance that had originally been adopted under enabling legislation, as occurred here.

Plaintiffs also contend that the Joint Powers Agreement entered into by the County and the City pursuant to Section 3–21–2 and effective September 3, 1991, required that their previously existing uses be "grandfathered." This argument rests on the assumption that, before execution of the Joint Powers Agreement, the County lacked zoning authority in the extraterritorial area. We have previously determined that Ordinance 213 had remained in force since its adoption in 1973. Thus, although the Joint Powers Agreement may have provided an additional legal basis for the County's future exercise of zoning authority in the extraterritorial area, it did not negate the fact that the County already had a valid zoning ordinance covering the extraterritorial area. In light of our conclusion that the County had zoning authority over Plaintiffs' properties, we necessarily reject Plaintiffs' argument that their nonconforming uses were "grandfathered."

## III. CONCLUSION

We hold that the County was not collaterally estopped from litigating the legal issue of the validity of Ordinance 213, that the ordinance was saved in its entirety by the saving clause in the 1975 Act, and that subsequent amendments to the extraterritorial zoning legislation did not implicitly repeal the ordinance. We therefore affirm the trial court's decision that the County could enforce Ordinance 213 against Plaintiffs' properties in the extraterritorial area.

**IT IS SO ORDERED.**

PICKARD, J., concurs.

HARTZ, J., (concurring in part and specially concurring in part).

HARTZ, Judge (specially concurring).

I concur in the result and virtually all of the discussion and reasoning in Judge Apodaca's opinion for the majority. My sole difference with the majority relates to the

three paragraphs in Section II(B) immediately following the paragraph discussing NMSA 1953, Section 15–36–23. Rather than joining the majority's view that the effect of the saving clause at issue here differs from that of Section 15–36–23, I conclude that the two provisions have the identical effect.

A proper understanding of the saving clause requires consideration of the 1975 Act as a whole. The Act repealed almost all of the sections in Article 36 of Chapter 15, entitled "Powers of Counties," and replaced them with a new Article 36A, entitled "County Ordinances," which redefined the powers of counties and spelled out the formalities for the proposal and adoption of county ordinances. In this context it would make perfect sense for the legislature to make clear that the new formulation of the powers of counties and the manner of adoption of ordinances was not intended to undo what counties had accomplished in the preceding decades.

It appears to me that this is precisely what the saving clause accomplishes. The clause spells out that all previously enacted ordinances, although enacted pursuant to now-repealed statutory provisions, remain on the books and continue to have the same effect. When the second portion of the saving clause says that the ordinances "shall have the same effect as if enacted pursuant to this Act," the most reasonable interpretation is that the ordinances shall have the same effect as if they had been enacted in accordance with the new procedures spelled out in Article 36A.

I agree with Plaintiffs that there is no difference in substance between saying "the ordinance is not repealed" and saying "the ordinance shall have the same effect as if enacted pursuant to newly enacted statutory procedures." Thus, the second portion of the saving clause is not strictly necessary. Nevertheless, it is not unheard of for statutes to include language solely for the purpose of emphasis. Indeed, as pointed out by the majority, there can be little doubt that language in Section 15–36–23 that is very similar to the second portion of the saving clause had no purpose other than emphasis. Section 15–36–23 is of particular interest because it may well have served as the model for the saving clause at issue in this case; after all, Section 15–36–23 was one of the statutory provisions repealed by the 1975 Act.

Finally, I should also add that I fully concur with one of the grounds expressed by the majority for rejecting Plaintiffs' proposed construction of the saving clause. For the reasons stated by the majority, I agree that we should "resist any interpretation of the 1975 Act that requires looking outside of that Act to other statutes or constitutional provisions to determine whether an otherwise saved ordinance has been repealed in whole or in part."