921 P.2d 327

**MERIDIAN OIL, INC., Plaintiff–Appellant,**

v.

**NEW MEXICO TAXATION AND REVENUE DEPARTMENT, a governmental agency of the State of New Mexico, Defendant–Appellee.**

No. 16845.

Court of Appeals of New Mexico.

July 15, 1996.

Michael B. Campbell, Michael H. Feldewert, Paul R. Owen, Campbell, Carr & Berge, P.A., Santa Fe, for Appellant.

Tom Udall, Attorney General, Margaret B. Alcock, Special Ass't Attorney General, Taxation and Revenue Department, Santa Fe, for Appellee.

## OPINION

APODACA, Chief Judge.

1. Meridian Oil, Inc. (Meridian) appeals from an administrative hearing officer's decision and order. The order denied Meridian's protest of the Taxation and Revenue Department's (Department) proposal to release an audit report on its oil and gas operations to Cinco General Partnership (Cinco). Cinco was a non-affiliated owner of working interests in properties operated by Meridian. This appeal requires us to construe NMSA 1978, Section 7–1–8(U) (Repl.Pamp.1995) of the Tax Administration Act, which makes it unlawful for Department employees to reveal certain taxpayer information concerning taxes incident to the severance, processing, and sale of natural resources. We hold that the hearing officer erred in interpreting Section 7–1–8(U) to permit the release of the audit report. We therefore reverse the order denying Meridian's protest.

## I. FACTUAL AND PROCEDURAL BACKGROUND

2. In April 1992, the Department and the New Mexico State Land Office informed Meridian of their intent to conduct a concurrent audit of the records of Meridian and its affiliated companies. The auditors requested records relating to the marketing, sales, transportation, and other disposition of natural gas and natural gas products from nine identified production units during three specified months in 1990 and 1991. The Department's audit manager acknowledged that Section 7–1–8 generally made it unlawful for Department employees to disclose certain information obtained about Meridian during the course of the audit.

3. The Department issued an audit report on September 30, 1993. The first part of the report described Meridian's operations, its accounting system, the audit procedures, and

the audit findings. The second part consisted of schedules and attachments in support of the narrative. The report contained confidential and proprietary business information derived from contracts between Meridian and third parties. It concluded that Meridian had underpaid production taxes upon production owned by Meridian and its affiliates, but that there had been no underreporting of production taxes where Meridian had paid such taxes on behalf of other interest owners. Meridian entered into a closing agreement with the Department in October 1993 that settled all issues between the parties.

4. Cinco owned a working interest share in one of the nine production units examined in the Meridian audit. Meridian reported and paid all gas and production taxes on behalf of Cinco that were attributable to Cinco's ownership interest in the single-production unit during the audit period. After the Meridian audit report was issued, Cinco requested a copy of the report from the Department pursuant to the Inspection of Public Records Act. NMSA1978, §§ 14–2–1 to –12 (Repl.Pamp.1995).

5. The Department informed Meridian of its intention to release the audit report to Cinco. Meridian filed an administrative protest with the Department, contending that the Department's decision to release the report pursuant to Section 7–1–8(U) was erroneous. Meridian also filed an injunctive action in district court. In that court action, Meridian obtained a preliminary injunction prohibiting the Department from granting Cinco's request pending a final decision on the administrative protest. After an evidentiary hearing, the hearing officer affirmed the Department's decision to release the report to Cinco pursuant to Section 7–1–8(U)(3). Meridian appeals from the hearing officer's ruling.

## II. DISCUSSION

### A. The Statutory Scheme

6. Section 14–2–1(F) of the Inspection of Public Records Act provides that every person has a right to inspect any public records of this state except "as otherwise provided by law." *See also Spadaro v. University of*

*N.M. Bd. of Regents*, 107 N.M. 402, 404–05, 759 P.2d 189, 191–92 (1988) (disclosure of public record subject to statutory and public policy considerations). The parties do not dispute that the Meridian audit report is a public record. *See* § 14–2–6(E) (Public records includes all materials "that are used, created, received, maintained, or held by or on behalf of any public body and relate to public business.").

7. Section 7–1–8 of the Tax Administration Act, on the other hand, restricts the disclosure of certain taxpayer information acquired by the Department. The statute states in pertinent part:

**7–1–8. Confidentiality of returns and other information.**

It is unlawful for any employee of the department or any former employee of the department to reveal to any individual other than another employee of the department any information contained in the return of any taxpayer made pursuant to any law subject to administration and enforcement under the provisions of the Tax Administration Act [this article] or any other information about any taxpayer acquired as a result of his employment by the department, except:

. . . .

U. information with respect to the taxes or tax acts administered pursuant to Subsection B of [NMSA 1978,] Section 7–1–2 [ (Repl.Pamp.1995) ], except that:

(1) information for or relating to any period prior to July 1, 1985 with respect to [NMSA 1978,] Sections 7–25–1 through 7–25–9 and 7–26–1 through 7–26–9 [Repl. Pamp.1995] may be released only to a committee of the legislature for a valid legislative purpose;

(2) contracts and other agreements between the taxpayer and other parties and the proprietary information contained in such contracts and agreements shall not be released without the consent of all parties to the contract or agreement; and

(3) audit workpapers and the proprietary information contained in such workpapers shall not be released except to a person having a legal interest in the property that is subject to the audit, to a

purchaser of products severed from a property subject to the audit or to the authorized representative of either, but this paragraph does not prohibit the release of any proprietary information contained in the workpapers that is also available from returns or from other sources not subject to the provisions of this section[.]

8. The taxes and tax acts administered under Section 7–1–2(B), referred to in the above-quoted statute, relate to the severance, processing, and sale of natural resources. The first clause of Section 7–1–8(U) is thus relevant to Meridian's audit report. The limitations imposed by Section 7–1–8(U)(1), however, are not pertinent to this appeal because the statutes specified in that subsection do not involve oil and natural gas. *See* §§ 7–25–3(B); 7–26–2(B).

9. Even a cursory examination of the above-noted statutory scheme discloses that the New Mexico legislature enacted a multiple exception format following the initial and broad right to inspection of public records permitted under Section 14–2–1(F). First, the introductory language of Section 7–1–8 entirely removes the right to inspection concerning taxation matters. Second, the right to inspection of tax information concerning the severance, processing, and sale of natural resources is reinstated by the first phrase of Section 7–1–8(U). Third, subsection (U)(2) then excepts the release of contracts between the taxpayer and other parties and the proprietary information contained in those contracts if the parties so consent.

10. The hearing officer interpreted Section 7–1–8(U) to provide that subsection (U)(3) created an exception to subsection (U)(2), permitting the release of contract materials that are part of audit workpapers. Meridian specifically challenges the hearing officer's determination that subsection (U)(3) provides an exception to subsection (U)(2). We are thus called upon to examine the relationship between the two subsections.

11. Subsection (U)(2) proscribes the release of contractual information without the consent of the taxpayer and other contracting parties. Subsection (U)(3) limits the release of audit workpapers and the proprie-

tary information contained in such papers to persons who have a legal interest in the property subject to audit or who have purchased products severed from the property subject to audit. Based on principles of statutory construction, consideration of the utility of Section 7–1–8(U)(3), and both historical background and legislative purpose, we reject the hearing officer's construction of subsection (U)(3) as an exception to subsection (U)(2). *See Cox v. Municipal Boundary Comm'n,* 120 N.M. 703, 705, 905 P.2d 741, 743 (Ct.App.) (statutory interpretation is matter of law; no deference given to interpretation below), *cert. denied,* 120 N.M. 636, 904 P.2d 1061 (1995). We consider each of these factors separately.

### B. Textual Construction

■ 12. "The starting point in statutory construction is to read and examine the text of the act · and draw inferences concerning the meaning from its composition and structure." 2A Norman J. Singer, *Sutherland Statutory Construction* § 47.01 (5th ed. 1992 & Cum.Supp.1996) [referred to as Singer] (footnote omitted).

■ 13 The first clause of Section 7–1–8(U) establishes that certain tax information may be disclosed, subject to exceptions. That clause ends with a colon. The further use of a semicolon to set off subsections (U)(1), (U)(2), and (U)(3) suggests that those three subsections are closely related to the first clause. *See* William Strunk Jr. and E.B. White, *Elements of Style* 7 (3rd ed.1979). The punctuation itself does not suggest that subsection (U)(3) bears a special relationship to either of the other subsections that those two subsections do not share with each other. Rather, the semicolons separating the three subsections indicate that the provisions comprise a list of three items of equal or similar importance.

14. The language of Section 7–1–8(U) does not permit the inference that the legislature intended subsection (U)(3) as an exception to subsection (U)(2); the latter subsection does not begin with any word like "but," "except," or "provided." *Baca v. Bueno Foods,* 108 N.M. 98, 102, 766 P.2d 1332,

1336 (Ct.App.1988). It would have been a simple matter for the legislature to insert conditional language in subsection (U)(2), as elsewhere in Section 7–1–8, if it had intended subsection (U)(3) to operate as an exception to subsection (U)(2). *See Stapleton v. Huff,* 50 N.M. 208, 213, 173 P.2d 612, 614 (1946) (court should not supply omitted language that could have been furnished by legislature). Therefore, on its face, subsection (U)(3) does not appear to operate as an exception to subsection (U)(2).

### C. Utility Of Section 7–1–8(U)(3)

15. The hearing officer based his construction of subsection (U)(3) as an exception to subsection (U)(2) on the determination that subsection (U)(3) does not have any utility unless it operates to permit the disclosure of the contract material that will inevitably be contained in audit workpapers pertaining to oil and gas tax audits. We disagree that such a construction is necessary to give meaning to subsection (U)(3).

16. Meridian acknowledges that audits of taxpayers engaged in the oil and gas business will generate audit workpapers containing contract information. Additionally, it is undisputed that resulting audit reports contain proprietary information derived from the contracts. It does not follow, however, that audit workpapers will contain only contractual information. *See generally* D. Edward Martin, *Attorney's Handbook of Accounting, Auditing and Financial Reporting* § 16.02(1)(i) (1995) (working papers are documents resulting from accountant's engagement to perform work).

17. For example, the initial letter advising Meridian of the concurrent audit requested copies of all documents related to the allocation of volume to the wells that contributed to the identified production units during the specified months. We have no reason to doubt Meridian's assertion that such information did not arise out of its contracts with third parties, that the information is pertinent to the company's tax liability, and that it will be found in the auditor's workpapers. Also, auditor's information request forms generated responses from Meridian that do not contain contractual information. These non-contract materials appear to qualify as audit workpapers that could be disclosed to appropriate parties under subsection (U)(3). Thus, we reject the Department's argument that subsection U(3) is meaningless unless it operates to permit disclosure of contract materials as an exception to subsection U(2). To state it differently, it is not necessary to construe subsection U(3) as an exception to subsection U(2) in order to give subsection (U)(3) utility. *Cf. Singer, supra,* § 47.11 (if absurd result reached by literal construction, exception presumed).

### D. Historical Background And Legislative Purpose

18. The legislature amended Section 7–1–8(U) in 1993 to include subsections (U)(2) and (U)(3); previously there was no statutory basis for the confidentiality of either the contract materials or the audit workpapers under consideration in this appeal. *See* NMSA 1978, § 7–1–8(U) (Cum.Supp.1991). We express no opinion as to whether disclosure may have been precluded as a matter of public policy. *See generally Spadaro,* 107 N.M. at 404–05, 759 P.2d at 191–92 ("rule of reason" balances "the fundamental right of all citizens to have reasonable access to public record" with policy considerations favoring confidentiality); *Tavoulareas v. Washington Post Co.,* 724 F.2d 1010, 1015 (D.C.Cir.1983) (constitutional privacy interests required protection of corporation's sensitive commercial information), *opinion vacated on other grounds,* 737 F.2d 1170 (1984).

19. At oral argument, in response to a query by the panel, the Department acknowledged that it had encouraged passage of the 1993 amendments (incorporation of (U)(2) and (U)(3)). The Department did so because it believed that it would be helpful to have some limited statutory provisions for confidentiality. Part of the motivation for the Department's support was that it believed there was no particular reason it should comply with requests for taxpayer information made by the news media. This historical information, of course, falls short of establishing the extent to which the legislature intended to limit disclosure of tax information. However, this abbreviated background,

along with the effect of the interpretation advanced by the hearing officer, guides us in our construction of the statute. *See Lopez v. Employment Sec. Div.*, 111 N.M. 104, 105, 802 P.2d 9, 10 (1990) (statutes interpreted to facilitate their operation and achievement of their goals); *Edwards v. Board of County Comm'rs*, 119 N.M. 114, 117, 888 P.2d 996, 999 (Ct.App.1994) (appellate court may consider the history and background of the legislation).

20. The Department acknowledges that, if we construe subsection (U)(3) to be an exception to subsection (U)(2), it would be more difficult for the Department to obtain information from taxpayers concerned with exposure of their business operations to competitors, and it would be necessary for the Department to resort to its subpoena power to gain compliance in the audit process. We are unwilling to interpret subsections (U)(2) and (U)(3) in a manner that would constrict or retard the flow of information to the Department when Section 7–1–8, in carving out exceptions to the general rule of access to public records, has been designed to promote communication from taxpayers to the Department. *See* Joel E. Smith, Annotation, *Validity, Construction, and Effect of State Laws Requiring Public Officials to Protect Confidentiality of Income Tax Returns or Information*, 1 A.L.R.4th 959, § 2 (1980) (purpose of statutes prohibiting disclosure of tax return information is to protect taxpayers' privacy or privilege against self-incrimination and to facilitate tax enforcement by encouraging full and truthful disclosure without fear their statements will be revealed or used against them for other purposes).

21. Additionally, in view of the important role that oil and gas taxes play in New Mexico revenues, *see Kennedy v. Yates Petroleum Corp.*, 104 N.M. 596, 597, 725 P.2d 572, 573 (1986) (in 1986 oil and gas industry provided more than 50% of state's total revenue), it is inconceivable to us that the legislature intended to leave such an obvious barrier to communication in place when it amended Section 7–1–8(U). *See Vigil v. Thriftway Mktg. Corp.*, 117 N.M. 176, 179, 870 P.2d 138, 141 (Ct.App.1994) ("[A]mended language must be read within the context of the previously existing language, and the old and new language, taken as a whole, comprise the intent and purpose of the statute or rule.").

## III. CONCLUSION

22. We construe subsections (U)(2) and (U)(3) to be independent exceptions to the exception set forth in the introductory clause of Section 7–1–8(U). It is undisputed that the entire audit report was based on contractual information and that subsection (U)(2) bars the release of Meridian's contracts and related proprietary information to Cinco. We therefore reverse the order permitting release of the Meridian audit report to Cinco under the provisions of Section 7–1–8. Meridian is awarded its costs on appeal.

23. **IT IS SO ORDERED.**

DONNELLY and BOSSON, JJ., concur.